# Hagner *against* Heyberger.

### NISI PRIUS.

An injunction will not be granted to restrain an individual from exercising the office of school director, who has accepted the office of commissioner of an incorporated district. The question of his right to exercise the duties of the office must be tried by proceedings on a writ of *quo warranto*, which affords an ample legal remedy.

Equity has no jurisdiction with regard to the election or amotion of corporators, nor in case of a public officer *de facto* of a municipal character.

The English chancery can by injunction restrain the commission of acts contrary to equity. The limited chancery powers of the courts of Pennsylvania extend only to prevent acts contrary to law.

The case is fully stated in the opinion of

SERGEANT, J.—This is a bill filed praying for an injunction to restrain the defendant from exercising the office of school director of the eleventh section of the first school district, alleging that the defendant claims and exercises the office when he has no right to do so, as his office has become vacant by reason of his having been elected to and accepted the office of commissioner of the district of Penn, a new district lately surveyed and laid out, comprising parts of North Penn township and South Penn township, under the Acts of Assembly of the 10th April 1843 and 26th February 1844; and the sole question raised by the bill is, whether the defendant can now legally hold and exercise the office of school director, or is to be deemed an usurper, and all his acts to be considered illegal and intrusive. This remedy by injunction is not sought as auxiliary to any other relief, but as the exercise of a primary and independent jurisdiction with a view to decide that question alone, and to declare the defendant not a legal officer. The defendant appears and contends, first, that an injunction is not sustainable in the present case; and, second, that under the provisions of various Acts of Assembly from time to time passed, concerning the school directors in this county, no incompatibility existed, but that he is legally qualified to hold and exercise both the office of commissioner of the district of Penn and school director of the eleventh section.

It is unnecessary to examine at large the question how far any court of chancery on a bill for an injunction in the case of a private corporation could undertake to decide upon the right of an officer to exercise the franchises attached to his office, and declare who was duly elected or not, or otherwise competent or incompetent to hold it, because the present is not the case of a private

[Hagner v. Heyberger.]

corporation, but of an individual claiming to exercise a public office in its nature municipal, and not composing a corporation or part of a corporation. But in the only case that has been cited, *The Attorney-General* v. *The Bank of Utica*, (2 *Johns. Ch.* 371), Chancellor KENT refused, on a bill filed for an injunction, to inquire into the right of the defendant to exercise the banking privilege, considering it as not the appropriate remedy, but that an ample legal remedy existed through the medium of the writ of *quo warranto*. On general principles, I should say that a bill for an injunction is not in its nature a proceeding to try the question raised here, whether the defendant by accepting the office of commissioner of the district of Penn, vacated the office of school director. An injunction would seem to be a writ adapted to control and regulate officers in the discharge of their functions, when they are confessedly such, rather than to try their right to hold and exercise their offices. Thus if, as is said by Chancellor KENT, directors of an insurance company were to appropriate the funds to their own private emolument; or if, disregarding their proper sphere of duty, they were to divert them to making roads and canals, or building theatres or churches; no doubt chancery would interfere and correct the abuse. But when the question is whether a corporation has forfeited its charter or usurped its franchise, this court is not the proper tribunal. And accordingly, in *The Attorney-General* v. *Earl of Clarendon*, (17 *Vez.* 491), it is expressly declared by the master of the rolls, that chancery has no jurisdiction with regard either to the election or amotion of corporators of any description. Corporators who are constituted trustees have sometimes been by decrees of the court of chancery divested of their trust for an abuse of it, as other trustees would have been, but that goes on other considerations; and see *Commonwealth* v. *Bank of Pennsylvania*, (3 *Watts & Serg.* 184), where an injunction was applied to the case of a trust against a corporation.

If this be so as to private corporations, *à fortiori* would it refuse the injunction in the case of a public officer of a municipal character, when there is a plain legal remedy provided by Act of Assembly of nearly cotemporary date, by means of the writ of *quo warranto*, which can probe the disease and eradicate it, whilst the most an injunction could do would be but to film it over. In addition to this, the difficulty meets us that it would be determining collaterally the right of a person who claims the office by colour of title, and exercises it *de facto*, which it has frequently been decided cannot be done. To bring his right to a fair trial, you must proceed directly and frame the issue so as to try it; and in the trial of that right by *quo warranto*, the law secures to the defendant the privilege of a trial by jury in relation to contested facts, which would be taken away by the proceeding by injunction.

VII. — 14

[Hagner v. Heyberger.]

Independently, however, of these considerations, it is ever to be borne in mind that the chancery powers of this court are very far from being universal, so as to embrace the great variety of subjects cognizable by courts of that description in the United States' judiciary, or that of many of the States that have chancellors, or the chancery of England.   On the contrary, the chancery jurisdiction of this court is of a limited character, being only a portion carved out of a large mass, and confided to our existing common law tribunals.   It is regulated by express provisions of our Acts of Assembly, beyond which we are not at liberty to go; and the question is, whether the power to sustain the proceeding by injunction against a municipal officer, for the purpose of trying his right to the office, is given to us.   The power is certainly not vested by the 5th clause of the 13th section of the Act of 16th June 1836, giving this court the supervision and control of all corporations, other than those of a municipal character, and unincorporated societies or associations and partnerships; for the school directors, as has been already said, are not a corporation, and, so far as they may resemble the objects of jurisdiction here mentioned, they would be excluded by the terms of the law. Over corporations of a municipal character this court has no general chancery control, it being apparently thought by the Legislature that the ordinary legal remedies provided were sufficient, and that it was only the numerous and diversified classes of private corporations so universally diffused amongst us, that required the interposition of the strong power of a court of chancery to keep them within the limits of law and duty.   I speak not now of the next clause to which I am going to advert, providing especially for injunctions in certain cases, because that clause no doubt applies to all persons, corporations, municipal or otherwise, as well as individuals, and is a remedy of a peculiar character.

I refer to the 5th clause of the latter part of the 13th section, which it has been strenuously urged on behalf of the complainants reaches their case, and authorizes us to issue the injunction prayed for by the bill; that is to say, the power of a court of chancery is given to this court, so far as it relates to the prevention or restraint of the commission or continuance of acts contrary to law, and prejudicial to the interests of the community or the rights of individuals.   But if, as appears before, even an English court of chancery would not sustain the injunction proceeding to try the election or amotion of corporators of any description, but would leave that to the ordinary legal remedy, how can it be supposed we could do it, when our chancery jurisdiction is so much curtailed of the portion they possess?   This clause certainly does not give us any power not possessed by them; on the contrary, we possess only so much of their power as is embraced under this head; and if they would not do it because there is an ample legal remedy, the same reason would prevent our exercise of it.   But

[Hagner v. Heyberger.]

not only is this the case; but this injunction power, as given to us, is restricted in the clause itself within much narrower limits than theirs.   They may issue injunctions to restrain acts contrary to equity, such, for example, as to stay proceedings at law.   We cannot do that.   The acts must be *contrary to law*, as well as prejudicial to the interests of the community or the rights of individuals; it is not a sufficient ground that they are contrary to equity.   And the object of this clause was to furnish adequate redress in cases where, although an action at law was maintainable, yet the injury might be irreparable, and it was necessary to justice to step in and prevent its being committed by a summary process.   Thus if there were sufficient ground to believe, in consequence of threats or otherwise, that an individual was about committing waste in timber, &c., or that a corporation was grossly abusing its privileges, or that a public officer, municipal or otherwise, was destroying or about to destroy public books and papers, or materially injure the public interests, or embezzle or waste the public moneys or properties, or in short any act was doing or likely to be done, for which damages could not perhaps compensate, and the legal redress might be too tardy or ineffectual, which was in the nature of misfeasance, nuisance, waste, spoil or destruction to property, and the act was contrary to law, and injurious to the community or individuals, a summary remedy is given by the strong arm of an injunction to stop it, or prevent its being done.   But is that the case here?   Is the defendant exercising the office contrary to law?   *Non constat*, and we cannot collaterally inquire into it.   He is exercising the office *de facto* under colour of right, and there has never been any proceeding against him at law to have him ousted, and he can only be ousted by writ of *quo warranto;* and thus we arrive at the conclusion, which has no doubt led to the decisions I have before adverted to, that it is not a case in which the remedy by injunction applies; but there is another appropriate remedy at law by which may be brought directly in question the single ground laid here, whether or not the defendant, by accepting the office of commissioner, vacated the office of school director; and a final judgment may be rendered declaring that he is rightfully the officer, or that he is an usurper, and thereupon removing him from office by judgment of ouster, and visiting him with the costs, which cannot be done under this proceeding by injunction.

It is said the remedy is dilatory and troublesome—that the defendant may plead to issue, and prolong the trial till after his term expires, and the redress comes too late, and is not worth having. This might possibly in some cases happen, but the Legislature have thought fit to leave to the defendant the privilege of the trial by jury; and both here and in England the remedy by *quo warranto* has long been practised, and, generally speaking, has effected the objects of justice.   It is not for us to be wiser than the law

[Hagner v. Heyberger.]

and for imaginary inconveniences to abrogate or evade the express enactments of our Legislature.

It is unnecessary, therefore, to say anything on the other point raised, as I am of opinion that the injunction must be denied, and the bill dismissed with costs.