HILL et al. *v.* THE COMMISSIONERS OF KENSINGTON et al.

The Court of Common Pleas sitting in equity under the Act of 1836, have jurisdiction over municipal corporations as well as private, when grossly abusing their privileges, and will, in a proper case, interfere by way of injunction. A Court of Chancery will not, on a motion for an injunction, decide doubtful questions of law or disputed questions of fact, nor exercise the authority of granting an injunction in doubtful cases. An interlocutory injunction is always a matter resting in the sound discretion of the Court.

It is not where there is only a seeming violation of law by the officers of a municipal corporation, that a Court of Equity will interfere by way of special injunction against them. Where the officers of a corporation are acting within their chartered rights, and in the exercise of a sound discretion, an injunction will not be issued to restrain them for a violation of a contract between the corporation and a third person.

Nothing but a palpable disregard of the law would induce the Court to interfere when the officers of a corporation are exercising a power submitted to their sound discretion. Where, however, such officers are assuming a power not delegated to them by law, then a Court of Chancery considers them no longer acting under legal authority, but treats them as individuals acting without legal authority. But it is only when they transcend their legal limits, that they are amenable to a Court of Equity.

Courts of Chancery will permit, in certain cases, one or more persons to represent in a suit all who have similar interests; but it is not to be considered a general rule. In all such cases, it must appear that the relief sought by him who sues, is in its nature beneficial to all those whom he undertakes to represent. Where that does not clearly appear, the bill will not be entertained.

Where the Court, for convenience, and from the difficulty of bringing all the names of those interested upon the record, have suffered one or more to bring their bill, it has been usually in those cases where the act complained of was a violation of law, breaches of public trusts, &c. But it cannot always be claimed as an absolute right.

*Sept.* 7.　THIS was a bill in equity, filed by John Hill and fifteen others, who state that they are inhabitants and residents of, or owners of property, and tax-payers of the district of Kensington, against the Commissioners and inhabitants of the Kensington District : against Solomon Wagner and others named as the Commissioners, John Taylor, treasurer, also Frederick A. Vandyke, and Jacob W. Colladay. It sets forth, that the Commissioners and inhabitants of said district, being desirous to introduce water from the river Delaware into said district, entered into a contract with Jacob W. Colladay, who, in consideration of the sum of $140,000, to be paid him in scrip or certificates of said district, in the manner set forth in said contract, covenanted and agreed to erect and construct the water-works required by said Commissioners in the manner set forth in certain specifications attached to the contract, which was made a part of the bill. It was also stated that Colladay gave bail as required, that F. A. Vandyke and one Heberton were his

sureties, &c. And that in pursuance of such contract, Colladay commenced and proceeded in the construction of said water-works, had progressed therein, and made large contracts with divers persons for materials for the prosecution thereof, and had in all respects faithfully complied with his contract, and always was treated by said Commissioners as the contractor, who had delivered to him certificates of stock from time to time, in part payment of the work done upon the contract.

The bill then charged that on the 3d day of August, 1850, F. A. Vandyke caused to be presented to said Commissioners a communication of that date, wherein he declared that said Colladay had made and executed to him an assignment or transfer of said contract, and to the certificates of stock to be issued thereon. That on the 5th day of said month, Colladay was informed thereof, and also that a committee of said Commissioners would meet that day for the purpose of ascertaining to whom the said contract belonged. That Colladay appeared and protested against such proceedings, or any action whatever by said committee and Commissioners; and then tendered his readiness to proceed with the contract to its completion, and his intention to hold said Commissioners liable on said contract.

It was then charged in the bill that Colladay had made no assignment of the contract to Vandyke; that some powers of attorney had been executed by him to said Vandyke, giving him authority to transfer some stock, but for no other purpose. Also that said committee did go into an examination of the matters. That a meeting of the Board of Commissioners was held on the 6th day of August, when said Colladay appeared and presented a protest in writing, against the proceedings of said Commissioners and committee, and tendered his entire willingness and readiness to fulfil his contract in every particular, and offered, if desired, good additional security for its performance, and indemnity against any claim of said Vandyke or any other person; and also notifying them that he intended to proceed with his work and hold the Commissioners liable for damages, and for the payment of the whole sum under the contract. He also revoked any, and all powers of attorney given to said Vandyke.

It was then averred in the bill that, notwithstanding all these notices, &c., the Commissioners adopted a resolution declaring that said Vandyke was the contractor, and owner of said contract, and that upon his giving indemnity, all further issues of certificates of stock, in pursuance of said contract, should be made in the name

of said Vandyke. That subsequently, said Colladay had asked for instructions as to the manner of executing some part of the work from said Commissioners, in pursuance of the specifications, but that they were refused; and also to recognise the contract with him; and the bill further charged that the treasurer had refused to permit a transfer of stock previously issued to said Colladay in part payment under said contract, and by him sold to third persons for value, and that unless restrained by the Court, said Commissioners intend to carry out their resolution, and refuse any future payments to said Colladay; but to recognise and deal with said Vandyke only as the contracting party; all of which is averred to be injurious to the credit of the district, unjust and fraudulent on the part of the corporation, producing a waste of moneys and funds belonging to the district. That unless restrained, they will permit Vandyke to conclude his contract, and then issue their certificates to him, and if so, the district will be obliged to pay damages to said Colladay to the extent of the full payment, as though he were to complete his contract; all of which would greatly and unnecessarily increase the burdens and taxation to be paid by the said complainants and others, as residents and tax-payers in said district.

The bill contained twenty-one interrogatories, and prayed that the corporation, and the Commissioners by name, and the treasurer, be enjoined by the Court from carrying into effect the resolution adopted by the Commissioners on the 6th of August; and also that they be enjoined and restrained from interfering with, or preventing said Colladay in any way in the performance of his contract aforesaid, and that they be restrained from refusing to recognise and deal with him as the contracting party.

On notice to the respondents being given, a motion was made for a special injunction. On the day of hearing, numerous affidavits were presented; all of which were objected to and not formally received. One by the President of the Board of Commissioners, in which he stated that proof was made before the Board of Commissioners, that when the original contract was bid for and taken by Colladay, although in his own name, yet in truth and fact it was for Vandyke, and that Colladay was his mere agent and trustee; that he had no interest in the contract, but was merely to have a certain sum of money for his services in making the bid; that subsequently, on the 30th of May, 1849, Colladay assigned all his interest in said contract to Vandyke, who received the certificates of stock issued therefor.

That when the estimate made by the engineer for July was to

be paid, Colladay drew the money (although he had previously given a power of attorney to Vandyke to draw the same); and that out of $11,200, which he had thus obtained, but one thousand thereof had been applied to payment of the sub-contractors and labourers who were doing the work, and that they refused to labour any further unless Vandyke assumed the control and responsibility of the work, and that it was feared under these circumstances that the works would not be completed by the 1st of January, 1851, the time specified in the contract; that it was under these circumstances the board felt it to be their duty to pass the resolutions referred to in the bill; and that Vandyke had given satisfactory security to indemnify the corporation from all damages which might accrue in relation to the change of contract in the premises, &c.

There were also affidavits of Vandyke and Colladay; the one alleging that Colladay was not the original contractor in truth and in fact, and alleging an assignment: the other denying all these assertions, and alleging that an assignment had not been made; that a power of attorney, signed by Colladay to Vandyke in blank, had been altered, and in it was inserted what purported to be an assignment. While these affidavits were offered to the Court, none were noticed but that of the President of the Board of Commissioners; the others not being admissible in practice on such a preliminary hearing as the present.

The motion for the injunction was argued by Messrs. *E. D. Tarr*, *C. Fallon*, and *C. Guillou* for the plaintiff; and *H. M. Phillips* and *J. M. Read* for the respondents.

It was contended in support of the motion that the tax-payers had a right to file the bill; that the Commissioners were trustees for the complainants. And that the Court had jurisdiction to grant the relief prayed for.

It was further contended that these were proper parties to the bill. That the Commissioners had assumed powers not given them by the Act of incorporation. It was alleged they were committing a breach of public trust; that they were wasting or misapplying the public funds, and this was an implied breach of their trust.

To sustain the several positions assumed in the argument, they cited 8th sect. of the Act 16th June, 1836, Dunlop, 835; Hagner *v.* Heyberger, 7 W. & S. 104; 10 Barr, 176; 5 Law Mag. 92; 1 Cases in Ch. 206; Ward *v.* Grisdwill, 16 Com. Reps. 593; 3 Mason, 115; Angell & Ames on Corp. 150–1; King *v.* Watson, 2 Term R.

204; Doct. & S. chap. 19; Equity, page 103, note 10; 2 Atkyns, 400; 6 Simons, 214; Robinson *v.* Smith, 3 Paige, 222; 1 Vesey & Beams. 246–7; 2 Story's Equity, § 955; last ed. note a; 4 Myl. & Craig, 254; 6 John. Chan. 160; 7 W. & S. 105; 6 John. Ch. 360.

Mr. *Phillips*, for the respondents, alleged the bill was by sixteen owners of property in the district, or tax-payers, and as such the plaintiff are not proper parties, and have no right to control the Commissioners as constituents, and are not proper parties to apply for relief.

It was contended that these sixteen inhabitants have no authority to enjoin the Commissioners or officers of the district. There is no equity on the ground of the complainants. Under the Act of 1836, municipal corporations are exempt from the jurisdiction of the Court sitting in equity. In the present case the right of the plaintiffs is defective, and therefore there is no equity in the complaint. By law the Commissioners are authorized to construct the works, and the citizens have no right to assume that damages will accrue. The Commissioners have a discretion.

The complainants do not ask the fulfilment of a contract with Colladay, or for him: cited 1 Mylne & Keen, 154; 2 Mylne & Craig, 123; 2 Merivale, 446; 6 Simons, 340.

Mr. *Read* contended that the Board of Commissioners have the full powers of the corporation. By the Act of 1848, they are authorized to construct the water-works, and the Commissioners are protected in an honest execution of their trust, and exercise of their discretion. They are the persons to control the work, and have the right to change or alter in any way the contract, which is deemed most for the interest of the district; and in the exercise of their powers are clothed with an extraordinary discretion.

Some of the plaintiffs, as tax-payers, have no right to vote; do not reside in the district. The mischief to Colladay has not arisen, and may never occur; therefore, these inhabitants have now no right to complain. The contract has been assigned, and it is alleged that the assignment is a forgery. There is an ample remedy for all complained of in a Court of Law.

Courts of Chancery have nothing to do with corporations as such, only in relation to charities. The Commissioners are acting in accordance with law, as they understand it, and in the exercise of an honest and sound discretion; and while so doing are not amenable in equity. There is no case where the inhabitants of a municipal corporation have ever filed a bill, none unless the Attorney-Gene-

64    2 U

ral was made a party. There is no irreparable mischief, and therefore it is not a case for a special injunction, nor is there such a clear case of undisputed title as would induce the Court to interfere in this summary manner; he cited 1 Kyd on Corporations, 108; 2 Ibid. 186; Spence Eq. Juris. Court of Chancery, p. 33; 1 Spence, 501; Attorney-General v. Bank of Miag. 1 Hopkins, 354; Angell & Ames on Corporations, 308; 3 Paige, 233; 1 Freeman Ch. Miss. Rep. 173; Attorney-General v. Wilson, 1 Craig & Phillips, 18; Foss v. Harboth, 2 Hare, 461, 490; 4 Mylne & Craig, 17; Mann v. Butler, 2 Barber's Ch. Rep. 362; 1 Barber S. C. Rep. 19, 217; Lawrence v. Mayor of New York, 2 Barber, 578; Vorhees v. Harris, 1 Barber, 439; 18 S. & R. 378, 411; 13 Jurist, 641; 14 Jurist, 491; 7 Hare, 114; 13 Jurist, 602; Act 6th March, 1820, 6th April, 1848, § 12; 7 Barr, 348; 2 John. Ch. 160, 384; Angell & Ames on Corporations, 584, 630, 654.

The following opinion was delivered by

PARSONS, Judge.—In deciding the present motion, I shall not consider all the various questions which may arise in the cause hereafter, and which were discussed on the argument; but only express an opinion on those points which determine the fate of this application.

It is to be borne in mind, that Kensington District is a municipal corporation. Its corporate powers and jurisdiction are defined by the Act of the 16th of March, 1820, and subsequent Acts of Assembly. The corporate functions of this district are mainly executed by a Board of Commissioners, consisting of twenty-one members elected by the people.

By an Act of Assembly passed the 6th of April, 1848, the Commissioners of the district of Kensington are authorized to construct suitable works, near the river Delaware, for the purpose of supplying said district with water, and to form such reservoirs as are deemed necessary for the reception of the water, lay pipes, &c. They are also authorized from time to time to borrow money, and pledge the faith of the district, for the purpose of accomplishing the objects contemplated by the law.

It is not denied that on the 30th of April, 1849, a contract was entered into by the Commissioners of said district in their corporate capacity with Jacob W. Colladay, for the entire construction of said water-works, for the sum of $140,000, and that he entered upon the execution of said contract; that the work has progressed well under his supervision, until a difficulty arose in July last,

which would seem to be mainly between himself and Vandyke, one of his sureties. From the view taken by the Court in relation to their decision on the present application, it is not deemed important to dwell much upon those controversies, or to decide what is the law in their various relations; nor shall I refer to them, only as it may be necessary incidentally, to illustrate the legal propositions which will be decided.

The first question which we shall consider is, whether this Court sitting in equity under the Act of the 16th of June, 1836, has jurisdiction in cases of municipal corporations? That Act provides, among other things, that we "shall have the supervision and control of partnerships and corporations, other than municipal corporations." It was suggested by one of the counsel for the respondents (although not finally pressed), that, as a Court of Equity, we had no jurisdiction in relation to municipal corporations. Such is not the construction which has been given to this Act by the Court of last resort in this state. The 5th clause of the 13th section must be considered in connexion with other parts of the law. The language of this is comprehensive. It gives us an equity power for "the prevention or restraint of the commission or continuance of acts contrary to law and prejudicial to the interests of the community, or the rights of individuals," without restraint, or excepting municipal corporations. Hence I have no doubt, that if a corporation was grossly abusing its privileges, whether municipal or private, and encroaching upon the rights of individuals, this Court would have authority to interfere by way of injunction.

Upon this principle the District Court of Pittsburgh, in the case of the Attorney-General v. Rush et al., decided in 1849, granted a perpetual injunction against the Mayor and Council of the city of Allegheny, and persons claiming under them, against the erection of buildings on a public square, which had been dedicated to public use by the original proprietors of that place, when the acts of the corporation were shown to be injurious to the public and the rights of individuals, as well as being in violation of law. This decision was, on an appeal, affirmed by the Supreme Court.

Nothing can be more clear, than that there is a class of cases where this Court can hold a municipal corporation responsible for their acts, when exercising jurisdiction in equity, if a proper case is presented, and will grant an injunction to restrain them, as they would an individual.

Most of them are referred to by Judge Sergeant, in delivering

the opinion of the Supreme Court in the case of Hagner *v.* Heyberger, 7 W. & S. 107, in which it is said, "that if a public officer, municipal or otherwise, was destroying or about to destroy public books and papers, or materially injure the public interests, or embezzle or waste the public moneys or properties, or, in short, any act was doing or likely to be done, for which damages could not perhaps compensate, and the legal redress might be too tardy or ineffectual, which was in the nature of misfeasance, nuisance, waste, spoil or destruction of property, and the act was contrary to law and injurious to the community or individuals, a summary remedy is given by the strong arm of an injunction to stop it, or prevent its being done."

. But does the present case come within the rule which has just been stated? It is contended by the learned counsel for the complainants that it does. It is said that the Commissioners having entered into a contract with Colladay to pay him for the construction of the water-works, it is a violation of their agreement with him, to take the contract from him and give it to another. That it is in truth and in fact *a violation of law*. It therefore being a violation of law, the Court can and ought to restrain these Commissioners from doing the act.

In a case where the act is clearly shown to be unlawful, and there can be no denial of the fact, it has been shown that the Court can and will grant an injunction, particularly where it affects the rights of individuals, and in certain cases the public at large. Now it may be a violation of law for these Commissioners to take from Colladay his contract and give it to his surety or a third person, and it may not be. It may be injurious to the public, that is, the citizens of the district, or it may not be.

If, as alleged by Mr. Wagner in his affidavit, Colladay paid only $1000 out of the July estimate of $11,200 to the sub-contractors, those who were really doing the work, and those contractors declined working for him, and could be induced to go on only upon the assurance that Vandyke (who was the surety to them), would see them paid; if, as the Commissioners say through their President, they believed that the contract had been legally assigned by Colladay to Vandyke, then it is not clear that this act of the Commissioners *would be a violation of law*, or the inhabitants would be subjected by the acts of their agents and representatives to any additional taxation.

Now, in order to ascertain the truth of the facts on this point, the Court, on this preliminary hearing on various affidavits, intro-

duced by the respondents, and counter affidavits also, produced by the plaintiffs (a practice in Chancery which cannot be sanctioned only in special cases), must decide that these Commissioners have been guilty of a gross violation of law.

This I am not disposed to do. For I concur entirely in the observation made by Judge Grier, in the case of Parker *v.* Sears, (which was an application for a special injunction) : " The Court are not bound, in this stage of the cause, to decide doubtful and difficult questions of law, or disputed questions of fact, nor exercise this high and dangerous power (if exercised rashly) in doubtful cases, before the alleged offender shall have an opportunity of a full and fair hearing." Perhaps the Court, on a final hearing of the cause, might be of the opinion that the act of the Commissioners was illegal, and perhaps we might be of a different opinion. And no principle of equity is better settled, than that the issuing of an interlocutory injunction is always a matter of sound discretion with the Court, and must depend upon the peculiar circumstances of each case.

It is equally clear that it is not every seeming violation of law or right, that will authorize a Court of Chancery to issue an injunction against the officers of a private or municipal corporation. Where the officers of such a body are acting within the pale of their chartered rights, and, in the exercise of a sound discretion, should do an act which a judicial tribunal might determine was illegal, as by the violation of a contract, it does not necessarily follow, that the Court would interfere by way of special injunction to restrain them, while they were seemingly acting in good faith, and for what they deemed the best interest of their constituents.

Let us apply this rule to the present case. It cannot be denied but that these Commissioners could contract for the erection of the water-works; and if, after a contract was made, they became convinced the contractor was not complying with the conditions of his contract, or without their consent had assigned it to another, and the work was not being carried on according to the stipulations of the agreement, and they apprehended that the interest of the district would be put in jeopardy thereby, these officers would be justified in taking the contract from him to whom it was first awarded, and giving it to another, even at the hazard of a lawsuit.

The Commissioners, under the facts alleged in the bill and affidavit, profess to have done nothing more. How, then, unless we attempt to decide the whole cause on this preliminary hearing, can we say they have done an illegal act, or that the tax-payers will

have their taxes increased ?   The law has referred this matter of the construction of the water-works to the officers of this corporation, and in the execution of the authority thus given, much is intrusted to their discretion, and not to the discretion of this Court; and, in my opinion, nothing but a clear and palpable disregard of the law would justify us in interfering with them.   For they may be wiser in the exercise of their discretion than we would.   I am free to say, that in this controversy between Colladay and Vandyke, it would have been far better that the Commissioners should have kept clear of it, unless, by their not interfering, these valuable public works would have been in danger.   If they would, then no one can doubt they would have been remiss in duty not to have acted.   In the absence of any clearer light than we now have upon the subject, I am bound to presume the Board of Commissioners apprehended such danger.   They may have erred in judgment; but in the present stage of the cause I am not disposed to say so.

In this view of the case, it seems to me, we are clearly sustained by authority.   In the case of Frewin v. Lewis, 4 Mylne & Craig, 254, the Lord Chancellor, in speaking of the jurisdiction of Courts of Equity over public functionaries, remarks, "So long as they confine themselves within the exercise of those duties which are confided to them by the law, this Court will not interfere.   The Court will not interfere to see whether any regulation or alteration which they may direct is good or bad; but, if they are departing from that power which the law has vested in them, if they are assuming to themselves a power over property which the law does not give them, this Court no longer considers them acting under the authority of their commission, but treats them, whether they be a corporation or individuals, merely as persons dealing without legal authority."   And the rule seems to be clear, that in all cases of incorporated bodies, such as canal or railroad companies, Courts of Chancery do not interfere, while they act clearly within the authority the law gives them, and it is only when they transcend those legal limits, that they are amenable to a Court of Equity by way of injunction: 4 Mylne & Craig, 256; Salmon v. Randall, 3 Ib. 439; 2 Story's Eq. § 955, N. a.

In connexion with this view of the law, it is to be observed, that Colladay, whose rights it is alleged will be invaded by those acts of the Commissioners, does not complain.   He does not ask that the officers of the corporation shall be restrained from doing what they claim they have a right to do under the circumstances of the case.

Have, then, these citizens any right to appear as parties and prosecute this bill?

They have not, unless it can be clearly shown that the Commissioners have done, or are about to do, some act not authorized by law; or assuming some power not conferred by their act of incorporation, or exercising a control over property which is not clearly given by statute, or invading the rights of individuals under the semblance of corporate authority. In short, as we have endeavoured to show, while the Commissioners confine themselves to the performance of those duties confided to them by the law, even if they err in their judgment, if their discretion is not wisely exercised, and their regulations or decisions may be such as men of greater wisdom, or more extended forecast, would not have adopted, still, unless they exceed their chartered limits, the Court will not interfere.

It cannot be well doubted that they had the authority to make the contract they did with Colladay, and it is equally clear, if he violated its terms and conditions, they would be justified in rescinding it, if, in the exercise of a sound discretion, they believed the great interests of their constituents demanded that it should be done.

I have been unable to find any case, and in the researches of the counsel for the plaintiffs, none was cited on the argument, where a Court of Equity had ever interfered to restrain the officers of a corporation in their making, changing, or rescission of contracts, while the law gave them full authority to deal in such agreements, or perform such acts. Now, the dissolution of a contract may become as important for the interests of the district as its creation.

The plaintiffs' counsel, to sustain their position, rely upon the cases of The King *v.* Watson, 2 Term Rep. 204, Wood *v.* Dunmer, 3 Mason, 308, and Robinson *v.* Smith, 3 Paige, 222. But upon a careful examination of them, I do not think these support them in the view they have taken.

The first case was decided in a Court of law, and one of the grounds for the information was, that the acts of the defendants complained of were a gross abuse of their trust. But the Court desired the counsel not to discuss that point, as it might be a subject for an application to a Court of Chancery; and the cause was decided on other grounds, to wit, that the acts complained of were a high contempt of the administration of public justice, and the manner in which the proceedings were carried on was a libel.

The case in Mason's Reports was one where the acts complained of were a clear violation of the chartered rights of the company,

and the application of the funds of the bank to a distribution among stockholders, without paying the creditors and the noteholders, who were first entitled to the funds. And that of Robinson v. Smith was a case where it was alleged there had been a wilful abuse of the trust, and a wasting of money by a misapplication of the funds of the company in a way not given by the charter. Nor does the case of the Mayor v. Lawton, 1 Vesey & Beams. 243, in any degree favour the position assumed.

But there are numerous cases to show that a Court of Equity will not entertain a bill like the present, or (to speak in qualified terms) issue a special injunction. In the case of The Charitable Corporation v. Sutton, 2 Atk. 420, Lord Hardwicke, in speaking of the officers of a corporation for charitable purposes, observes: "Now, where acts are executed within their authority, as respecting by-laws and making orders, in such cases, though attended with bad consequences, it will be very difficult to determine that these are breaches of trust. For it is by no means just in a judge, after bad consequences have arisen from such executions of their power, to say that they foresaw at the time what must necessarily happen, and therefore were guilty of a breach of trust."

So also in the Atty. Genl. v. Utica Ins. Co., 6 John. Ch. Rep. 371, the whole reasoning of the Chancellor is upon the principle which has been indicated.

Whether Colladay could demand an injunction, had he filed his bill, is not a question now before this Court. At the last March Term of the Supreme Court, a case not unlike the present was before Judge Rogers, holding at Nisi Prius: a case which was not cited on the argument. It was the case of Schofield v. The Mayor and Councils of the city. The Councils, through their officers, had advertised under certain ordinances, inviting sealed proposals for the cleansing of the streets, alleys, &c., of the city for one year. The plaintiff had made his proposals, was prepared to give the security required by the ordinance, and alleged in his bill, that under said ordinances the Councils were bound to give the contract to the lowest bidder who complied with the terms of their proposals, which the plaintiff averred he had done; but the officers did not award to him the contract, as they ought to have done; on the contrary, they gave it to another individual, who also was made a party to the bill, at the price and sum of $600 more than that for which the complainant had offered to do the same work. The prayer in the bill was that the Mayor and Councils be decreed to give him

the contract, and that they be enjoined from giving it to the other contractor, and that he be enjoined from pursuing the work.

It was also averred in the bill, that before the contract was awarded to the then contractor and one of the defendants, a notice was given to the Councils by the plaintiff that he would claim that the contract should be given to him as the lowest bidder.

An affidavit was filed by one of the members of council, who had the subject in charge, giving a copy of the bids, which showed that the plaintiff had bid lower than the contractor to whom the work was awarded; it was also stated therein, that the contract had been given to Feltwell, who was a higher bidder.

The case was heard on a motion for a special injunction, as prayed for in the bill; but after a full hearing, the Court overruled the motion and refused the application. No written opinion was given by the Judge in the cause; but I am informed that it was upon the ground, that it was a mere matter of discretion to be exercised by those public functionaries, in relation to their contract; while acting in the line of their duty, a Court of Equity would not interfere with them in relation to their mere exercise of judgment.

One can perceive there might have been other reasons operating upon the mind of the Court. The case is applicable to the present in this particular, although a refusal to give the contract to Schofield might subject the corporation to an action for damages, and thereby subject the inhabitants to an increase of taxation; yet the Court were not disposed to interpose in behalf of the lowest bidder to save the city from this supposed additional liability of taxation, or to compel a specific performance of the offer made by the officers of the corporation.

Another question of great interest has been partially discussed on this hearing; and that is, whether the plaintiffs are proper parties to the bill, being merely citizens, and alleging that they are tax-payers.

It is, perhaps, unnecessary to express any direct opinion on this point, as the cause is for the present determined upon another ground. It may, or may not, be agitated hereafter. I will simply remark, that a practice has been adopted by Courts of Chancery, of permitting one or more persons to represent in a suit all who have similar interests; *but it is not to be considered a general principle.* It is only in certain cases where it can be done. It was observed, in the case of Gray v. Caplin, 2 Sim. & Stew. 267, that in order to enable a plaintiff to sue on behalf of himself and

65

others, who stand in the same relation with him to the subject of the suit, it must appear that the relief sought by him is in its nature beneficial to all those whom he undertakes to represent. Where that does not clearly appear, then the bill will not be entertained; and such was the case of Jones v. Del Rio, 1 Turn. & Rus. 297. This distinction is also recognised in the case of the Attorney-General v. Hulis, 2 Sim. & Stew. 67.

If it was clearly made to appear before us, on this application, that the Commissioners were not acting within the scope of their chartered powers, and that their acts would necessarily tend to increase the amount of taxation in the district, it would then probably be a case where these sixteen persons, or a less number, might sue on behalf of themselves and others, the inhabitants of the district.

But if the Commissioners are correct in the view expressed by them as to the execution of the contract on the part of Colladay, then the other inhabitants will have no interest in the subject-matter of the bill, for then there will be no increase of taxation.   And, perhaps, all the rest of the citizens of the district concur in the opinion expressed by the Commissioners, that it was for the general interests of the district that the contract with Colladay should be abrogated, and given to another.   If so, then the principle applied by Lord Eldon, in the case of Jones v. Del Rio, ought to be adopted on the present occasion.   That was a case where the plaintiff, being one of the subscribers to a loan of money to a foreign state, filed a bill on behalf of himself and all other subscribers to that loan, to rescind the contracts of subscription, and to have the subscription money returned; but it was held that the plaintiff was not entitled in that case to represent all the other subscribers, because it did not necessarily follow that every subscriber should, like him, wish to retire from the speculation, and every individual must, in that respect, judge for himself.

And I think it will be found in all this class of cases, where the Court, for convenience, and from the difficulty of bringing all the names of those interested upon the record, have suffered one or more to bring their bill, it has been where the act complained of was a violation of law, by disregarding chartered rights, or breaches of public trust, in the waste or mismanagement of public moneys; but I have been unable to find any case where the plaintiff complained only of acts which were within the sound discretion of public officers, or a question of policy, or regulation by such officers, that one or more, representing himself and others, has been

recognised as a proper plaintiff to a bill. There may be such cases in the books, but they have not been presented by counsel, nor discovered by the Court.

It was ruled by this Court, in the case of Hassinger, 2 Ashm. 293, that, after an act of incorporation passed, those who compose the company are not known as individuals, and have no legal existence but as a corporate body, and could only be known through their corporate seal, and were not permitted to oppose the discharge of an insolvent debtor who had defrauded the company, while the president and managers were passive, and refused to act. Now, if this is the rule with regard to private or moneyed corporations, it applies with still greater force to municipal or public corporations. The same principle was held in the case of St. Mary's Church, 6 S. & R. 505.

> For the various reasons given, the application for an injunction is refused.