# IN RE SAWYER and Others.

### ORIGINAL.

Argued December 12, 1887. — Decided January 9, 1888.

A court of equity has no jurisdiction of a bill to stay criminal proceedings.

A court of equity has no jurisdiction of a bill to restrain the removal of a public officer.

The Circuit Court of the United States has no jurisdiction or authority to entertain a bill in equity to restrain the mayor and committee of a city

in Nebraska from removing a city officer upon charges filed against him for malfeasance in office; and an injunction issued upon such a bill, as well as an order committing the defendants for contempt in disregarding the injunction, is absolutely void, and they are entitled to be discharged on *habeas corpus.*

THIS was a petition for a writ of *habeas corpus,* in behalf of the mayor and eleven members of the city council of the city of Lincoln in the State of Nebraska, detained and imprisoned in the jail at Omaha in that state by the marshal of the United States for the District of Nebraska, under an order of attachment for contempt, made by the Circuit Court of the United States for that district, under the following circumstances:

On September 24, 1887, Albert F. Parsons presented to the Circuit Judge a bill in equity against said mayor and councilmen, the whole of which, except the title, the address and the signature, was as follows:

"Your petitioner is, and for more than fifteen years last past has been, a citizen of the United States, and a resident and citizen of the State of Nebraska, and as such citizen has been and is entitled to the equal protection of the laws, and to life, liberty and property; nor could he be deprived thereof without due process of law, nor denied the same within the jurisdiction of the United States or of the State of Nebraska.

"On the —— day of April, 1886, this complainant was duly and legally elected to the office of police judge of the city of Lincoln, in Lancaster County, Nebraska, and soon thereafter did duly qualify and enter into the discharge of his duties as such police judge; and ever since, and yet at this time, complainant has held and exercised all the functions and performed all the duties of the said office; and for the last six months and more all of the respondents except the said Andrew J. Sawyer have been and yet are the duly elected, qualified and acting councilmen of the said city, and the said Sawyer has been and yet is the duly elected, qualified and acting mayor of the said city.

"On the —— day of August, 1887, and for a long time prior thereto, there was a certain ordinance in the said city in

full force, relating to the removal from office of any official of the said city, and which said ordinance provided that no officer of said city should be put upon trial for any offence charged against him, except before all the members of the said city council.

"On the —— day of August, 1887, one John Sheedy, Gus. Saunders and A. J. Hyatt filed in writing with the city clerk of said city certain charges against this complainant, charging this complainant with appropriating the moneys of the said city, and a copy of which is hereto attached and made a part hereof; [1] and said mayor thereupon referred the said matter

---

[1] To the Honorable Mayor and Council of the City of Lincoln:

Your petitioners, John Sheedy and A. Saunders, respectfully represent to this honorable body, that they are citizens and resident taxpayers of the city of Lincoln; and your petitioners would further represent that on the 13th day of July, 1887, they employed a skilful accountant, one M. M. White, a resident and taxpayer of this city, to examine into the dockets and files and reports of A. F. Parsons, police judge of this city of Lincoln, to learn whether said A. F. Parsons, police judge, was making true and proper statements to the city of the business done by him as police judge, and to further ascertain whether or not said A. F. Parsons, police judge, had turned over to the city and county treasurers all moneys coming into his hands as fines and properly belonging to the city and county.

And your petitioners say that after a proper and careful examination of the files and dockets and reports of said A. F. Parsons, police judge, they have ascertained beyond question that said A. F. Parsons, police judge, has appropriated to his own use and benefit large sums of money which is the property of the city of Lincoln, and that he now has and keeps for his own use moneys which he has collected as fines from persons brought before him as police judge for violating the city ordinances.

And your petitioners say that the said A. F. Parsons, as police judge, collected fines for the violation of the city ordinances, in the months of August, September, October, November and December, 1886, which fines and moneys he has appropriated to his own use, and has utterly failed to keep any record or account of the same or to account to the city, or turn over to the city treasurer any of the moneys so appropriated, as is required by law.

And your petitioners say that in the months of April, May and June, 1887, the said A. F. Parsons received fines from divers persons, as police judge, which he has appropriated to his own use, and had wholly failed to keep any record of said fines or to account to the city for the same.

And your petitioners say that the said A. F. Parsons, as police judge, collected fines from divers persons in the month of May, 1887, and the

Statement of the Case.

to a committee of only three of the members of the said council, to make a finding of fact and law upon the said charges; and said committee of three caused a notice to be served upon your complainant, requiring him to appear and defend himself before them; and complainant did appear before said committee, and then objected to the jurisdiction of the said committee, that they had no right or authority to render a verdict of the fact against him, or give judgment of law upon the said charges, or to hear or determine the said trial; and thereupon the said committee reported back the said charges to said mayor and council, that the said committee, under the charter to the said city, had no right or authority to render a verdict or judgment upon the said charges. But the said Sheedy and Saunders, who are, and for more than ten years have been, common gamblers in the said city, and are men of large wealth and

---

months of March and April, 1887, and the month of September, 1886, which fines he has appropriated to his own use and benefit, and has wholly failed to keep any record of the said fines, or to make any report to the city of the same.

And your petitioners say that the said A. F. Parsons has been police judge since April, 1886, and that during that time he has collected fines for the violation of statutes of Nebraska to the amount of $329, according to his dockets, and up to the 19th day of July, 1887, he had turned in to the county treasurer of Lancaster County but the sum of $15; whereas he had in his possession on the 1st day of July, 1887, the said sum of $314, which properly belonged to the county.

And your petitioners say that on said 19th day of July, 1887, the day on which the accountant M. M. White completed the investigation of the said police judge's dockets, said Parsons paid into the county treasury the sum of $195, which leaves due the county the sum of $119, which was in his possession on the 19th day of July, 1887.

Your petitioners therefore ask that the Honorable Mayor and Council may appoint a committee of your honorable body, and that a time and place be mentioned on which to take testimony inquiring into the conduct of A. F. Parsons as police judge and to investigate the management of his office, and to give the said A. F. Parsons and your petitioners notice of such time and place, and your petitioners will appear with the evidence and testimony proving the facts hereinbefore stated.

A. SAUNDERS.
JOHN SHEEDY.
A. J. HYATT.

influence in said city council, at once and on the —— day of August, 1887, and long after said complaint against this complainant had been filed, and long after said committee had reported back to said mayor and city council that they had no right, power or authority to hear said trial or to render either verdict or judgment in said proceedings, did procure the passage of another and different and *ex post facto* ordinance, granting to the said committee of three, instead of the council of twelve members, as by said ordinance required, the right and power to try the facts as alleged in said charges and make a report thereon, and, if in their judgment they saw fit, to report to said mayor and city council that the office of the police judge should be declared vacant, and that the said mayor should fill the office of the said police judge, now occupied by your complainant, with some other person.

"And after the passage of this *ex post facto* law, said committee of three assumed jurisdiction to render a verdict of fact, and to hear and determine the said charges, and add thereto a conclusion of law, and notified this complainant to again appear and defend himself before the said committee, and this complainant then and there again objected to the jurisdiction of said committee to make any finding of facts against him, or to render any judgment or report thereon, upon the ground that said new ordinance was *ex post facto*, and that said committee had no jurisdiction.

"On the 19th day of September, 1887, the said committee, having heard before themselves, denying to complainant a trial to a jury, and the evidence for the prosecution of the said action by certain gamblers and pimps, no material evidence for the prosecution being offered to them otherwise, did render a finding of fact against this complainant, and recommending to said mayor and city council that the office of police judge should be declared vacant, and that the said mayor should fill the said office by the appointment of some other person than complainant, and found that said ordinance was not *ex post facto ;* and the said mayor and city council have set the matter for final vote on Tuesday, the 27th day of September, 1887, and threaten and declare that on the said day they will

declare the office of the said complainant vacant, without hearing or reading the evidence taken before said committee, and appoint some other person to fill the same, and which report untruthfully states that all their evidence is filed therewith, and fraudulently so to suppress a certain book offered in evidence by complainant, which book is in the handwriting of said Gus. Saunders, and which is done to favor and aid and protect said gamblers, and to fraudulently obtain the removal of complainant from his said office.

"This complainant says that all of the said proceedings, trial, verdict, and other acts and doings of the said city council, and the ordinance approved ————, as well as the said ordinance approved August ——, 1887, were and are illegal and void, and contrary to, and in conflict with, and prohibited by, the Constitution of the United States, whereby among other things it is provided that no person shall be deprived of life, liberty or property without due process of law, nor deny to any person within its jurisdiction equal protection of the law, nor be adjudged of or tried for any offence by an *ex post facto* law ; and complainant says that forasmuch as by the Constitution of the United States it is provided that no person shall be deprived of life, liberty or property without due process of law, and that in all criminal prosecutions the accused shall have the right of process to compel the attendance of witnesses in his behalf, and a speedy trial by an impartial jury of the county in which the offence is alleged to have been committed, and that no *ex post facto* law shall be passed, and that all of said rights shall remain inviolate, but such rights being denied by said ordinance and proceedings aforesaid to this complainant, he has been and is, and is threatened to be, deprived of such rights without due process of law, and that the same is *ex post facto* law, within the meaning of the Constitution of the United States, and which protection has nor is not accorded to this complainant, he has been by said proceedings, and yet is, deprived of the equal protection of the laws.

"All of which illegal and oppressive acts and things are in violation of and in conflict with the Constitution of the United

States, and ought to be redressed by the judicial powers thereof.

"Wherefore complainant prays that a writ of injunction may be allowed by your honor to be issued out of this honorable court, under the seal thereof, directed to the respondents and all thereof, that they proceed no further with the charges against this complainant, and that no vote be had by the city council or the said defendants upon the pretended findings of the facts, verdict or report, and filed September 19th, 1887, with the said city clerk, handed in by Councilman Billingsley, and that said defendants nor any of them do not declare said office vacant, or in any way or manner proceed further with said charges, nor appoint any person to fill said office; that said defendants may appear and answer this your complainant's bill, but answer under oath being expressly waived; that on the final hearing of this action said injunction be made perpetual, and that the defendants pay the costs of this action, and that the complainant have such other, further and different relief as justice may require."

Annexed to the bill was an affidavit of Parsons that he had read it, and knew all the facts therein set forth, and that the same were true.

On reading the bill, the Circuit Judge ordered that the defendants show cause before the Circuit Court, why a preliminary injunction should not issue as prayed for, "and that in the mean time, and until the further order of the court, they be restrained from doing any of the matters sought to be enjoined."

In accordance with the prayer of the bill and the order of the judge, an injunction was forthwith issued and served upon the mayor and councilmen.

After this, at a meeting of the city council held for the purpose, the mayor and councilmen proceeded to take up and consider the charges against Parsons, and, after considering the evidence, passed a resolution by which they "find that said Parsons received a number of fines for the violation of the city ordinances, which he failed to turn in to or report to the city treasurer at times required by law, and specified in

the charges against said Parsons," and "that his arrangement with the gamblers and prostitutes, that if they would pay a fine monthly they would not otherwise be molested, was in direct violation of law, and calculated to bring the city government into disgrace;" and "therefore confirm the report of the committee who reported to this council on the charges against said Parsons, and declare the office of police judge of the city of Lincoln vacant, and request the mayor to fill the office with some competent person." Thereupon the mayor nominated, and the council on motion confirmed, H. J. Whitmore to be police judge, to fill the vacancy; and the mayor issued an order to the city marshal, informing him that Whitmore had been duly qualified and given bond and been commissioned as police judge, and directing him to see that he be duly installed in his office. Parsons declining to recognize the action of the city council, or to surrender the office, the city marshal forcibly ejected him and installed Whitmore.

Upon an affidavit of Parsons, charging the mayor and councilmen with wilful and contemptuous violation of the injunction, stating the above facts, and accompanied by a copy of a notice to him from the city clerk, setting forth the resolution of the city council, and the nomination and confirmation of Whitmore, as well as by a copy of the mayor's order to the city marshal, the Circuit Court issued a rule to the mayor and councilmen to show cause why they should not be attached for contempt. Upon their answer to that rule, under oath, producing copies of the ordinances under which they acted, (the material parts of which are set forth in the margin,[1])

---

[1] The original ordinance contained these sections:

" Sec. 1. Whenever any officer of the city of Lincoln, whose office is elective, shall be guilty of any wilful misconduct or malfeasance in office, he may be removed by a vote of two thirds of all the members elected to the council; Provided, that no such officer shall be removed from office unless charges in writing, specifying the misconduct or nature of the malfeasance, signed by the complainant, and giving the name of at least one witness besides the complainant, to support such charges, shall be filed with the city clerk, president of the council, or mayor, which charge and specifications shall be read at a regular meeting of the council, and a copy thereof, certified by said clerk, president of the council, or mayor, accompanied with a

admitting and justifying their disregard of the injunction, and suggesting a want of jurisdiction in the Circuit Court to make the restraining order, the court granted an attachment for their arrest; and, upon a hearing, found them guilty of violating the injunction, and adjudged that six of them pay

---

notice to show cause, at the next regular meeting of said council, why he shall not be removed from office, shall be served upon the officer so accused at least five days before the time fixed to show cause.

" SEC. 2. In case the said accused officer shall neglect to appear and file a denial in writing, or render a reason for not doing so, at the first regular meeting of said council after being duly notified, the said charge and specifications shall be taken as true, and the council shall declare the office vacant.

" SEC. 3. In case said officer shall file a denial of said charge and specifications in writing, the council shall adjourn to some day for the trial of said officer; and if upon the trial of said officer said council shall be satisfied that he is guilty of any misconduct wilfully, or malfeasance in office, they shall cause such finding to be entered upon their minutes, and shall declare said office vacant, and shall proceed at once to fill such vacancy in the manner provided by statute and ordinance.

" SEC. 4. All proceedings and notice in the matter of such charges may be served by the marshal or any policeman, and the return of any such officer shall be sufficient evidence of the service thereof; service and return shall be in the manner provided by law for the service of summonses in justice's courts."

By the ordinance of August 24, 1887, section 3 of the former ordinance was repealed, and the following amendment substituted:

" In case said officer shall file a denial of the said charges and specifications in writing, the council, or the committee of the council, to whom said charges shall have been referred, shall appoint some day for the trial of said officer, and if upon the trial of said officer said council or said committee shall be satisfied that he is guilty of any misconduct wilfully, or malfeasance or misfeasance in office, the council shall cause its findings, or the findings of said committee, to be entered upon the minutes of the council, and the council shall declare the said office vacant and the said officer removed therefrom. The council shall then forthwith cause the mayor to be notified that the said office is vacant and that said officer is so removed. When the mayor is so notified, the said office shall be filled by appointment of the mayor by the assent of the council; and such person so appointed shall hold said office until the next general election, and as in such case by statute and ordinance made and provided. If the officer against whom said charges are made shall appear and defend against the same, he shall be held and deemed to have waived all irregularities of proceedings, if any, as do not affect the merits of his defence."

fines of six hundred dollars each, and the others fines of fifty dollars each, beside costs, and in default of payment thereof stand committed to the custody of the marshal until the fines and costs should be paid, or they be otherwise legally discharged. They did not pay the fines or costs, and were therefore taken and held in custody by the marshal.

The petition for a writ of *habeas corpus* alleged "that the court had no jurisdiction of said suit commenced by the said Albert F. Parsons against your petitioners, and that said restraining order was not a lawful order, and that said judgment of said court that your petitioners were in contempt, and the sentence of said court that your petitioners pay a fine and suffer imprisonment for violating said restraining order, is void, and wholly without the jurisdiction of the Circuit Court of the United States, and in violation of the Constitution of the United States;" and further alleged "as special circumstances, making direct action and intervention of this court necessary and expedient, that it would be useless to apply to the Circuit Court of the United States for the District of Nebraska for a writ of *habeas corpus*, because both the Circuit and District Judges gave it as their opinion in the contempt proceedings that the said restraining order was a lawful order and within the power of the court to make."

*Mr. G. M. Lambertson* for petitioners.

*Mr. L. C. Burr* opposing, on behalf of Parsons.

MR. JUSTICE GRAY, after stating the case as above reported, delivered the opinion of the court.

The question presented by this petition of the mayor and councilmen of the city of Lincoln for a writ of *habeas corpus* is whether it was within the jurisdiction and authority of the Circuit Court of the United States, sitting as a court of equity, to make the order under which the petitioners are held by the marshal.

Under the Constitution and laws of the United States, the distinction between common law and equity, as existing in

England at the time of the separation of the two countries, has been maintained, although both jurisdictions are vested in the same courts. *Fenn* v. *Holme*, 21 How. 481, 484–487; *Thompson* v. *Railroad Co.*, 6 Wall. 134; *Heine* v. *Levee Commissioners*, 19 Wall. 655.

The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of rights of property. It has no jurisdiction over the prosecution, the punishment or the pardon of crimes or misdemeanors, or over the appointment and removal of public officers. To assume such a jurisdiction, or to sustain a bill in equity to restrain or relieve against proceedings for the punishment of offences, or for the removal of public officers, is to invade the domain of the courts of common law, or of the executive and administrative department of the government.

Any jurisdiction over criminal matters, that the English Court of Chancery ever had, became obsolete long ago, except as incidental to its peculiar jurisdiction for the protection of infants, or under its authority to issue writs of *habeas corpus* for the discharge of persons unlawfully imprisoned. 2 Hale P. C. 147; *Gee* v. *Pritchard*, 2 Swanston, 402, 413; 1 Spence Eq. Jur. 689, 690; *Attorney General* v. *Utica Ins. Co.*, 2 Johns. Ch. 371, 378.

From long before the Declaration of Independence, it has been settled in England, that a bill to stay criminal proceedings is not within the jurisdiction of the Court of Chancery, whether those proceedings are by indictment or by summary process.

Lord Chief Justice Holt, in declining, upon a motion in the Queen's Bench for an attachment against an attorney for professional misconduct, to make it a part of the rule to show cause that he should not move for an injunction in chancery in the mean time, said, "Sure chancery would not grant an injunction in a criminal matter under examination in this court; and if they did, this court would break it, and protect any that would proceed in contempt of it." *Holderstaffe* v. *Saunders*, Cas. temp. Holt, 136; *S. C.* 6 Mod. 16.

Lord Chancellor Hardwicke, while exercising the power of

the Court of Chancery, incidental to the disposition of a case pending before it, of restraining a plaintiff, who had by his bill submitted his rights to its determination, from proceeding as to the same matter before another tribunal, either by indictment or by action, asserted in the strongest terms the want of any power or jurisdiction to entertain a bill for an injunction to stay criminal proceedings, saying, "This court has not originally, and strictly, any restraining power over criminal prosecutions;" and again, "This court has no jurisdiction to grant an injunction to stay proceedings on a mandamus; nor to an indictment; nor to an information; nor to a writ of prohibition; that I know of." *Mayor & Corporation of York v. Pilkington*, 2 Atk. 302; *S. C.* 9 Mod. 273; *Montague v. Dudman*, 2 Ves. Sen. 396, 398.

The modern decisions in England, by eminent equity judges, concur in holding that a court of chancery has no power to restrain criminal proceedings, unless they are instituted by a party to a suit already pending before it, and to try the same right that is in issue there. *Attorney General v. Cleaver*, 18 Ves. 211, 220; *Turner v. Turner*, 15 Jurist, 218; *Saull v. Browne*, L. R. 10 Ch. 64; *Kerr v. Preston*, 6 Ch. D. 463.

Mr. Justice Story, in his Commentaries on Equity Jurisprudence, affirms the same doctrine. Story Eq. Jur. § 893. And in the American courts, so far as we are informed, it has been strictly and uniformly upheld, and has been applied alike whether the prosecutions or arrests sought to be restrained arose under statutes of the State, or under municipal ordinances. *West v. Mayor &c. of New York*, 10 Paige, 539; *Davis v. American Society for Prevention of Cruelty to Animals*, 75 N. Y. 362; *Tyler v. Hamersley*, 44 Conn. 419, 422; *Stuart v. Board of Supervisors*, 83 Illinois, 341; *Devron v. First Municipality*, 4 La. Ann. 11; *Levy v. Shreveport*, 27 La. Ann. 620; *Moses v. Mayor &c. of Mobile*, 52 Alabama, 198; *Gault v. Wallis*, 53 Georgia, 675; *Phillips v. Mayor &c. of Stone Mountain*, 61 Georgia, 386; *Cohen v. Goldsboro Commissioners*, 77 No. Car. 2; *Waters Peirce Oil Co. v. Little Rock*, 39 Arkansas, 412; *Spink v. Francis*, 19 Fed. Rep. 670, and 20 Fed. Rep. 567; *Suess v. Noble*, 31 Fed. Rep. 855.

It is equally well settled that a court of equity has no juris-diction over the appointment and removal of public officers, whether the power of removal is vested, as well as that of appointment, in executive or administrative boards or officers, or is entrusted to a judicial tribunal. The jurisdiction to de-termine the title to a public office belongs exclusively to the courts of law, and is exercised either by *certiorari*, error or appeal, or by mandamus, prohibition, *quo warranto*, or infor-mation in the nature of a writ of *quo warranto*, according to the circumstances of the case, and the mode of procedure established by the common law or by statute.

No English case has been found of a bill for an injunction to restrain the appointment or removal of a municipal officer. But an information in the Court of Chancery for the regula-tion of Harrow School, within its undoubted jurisdiction over public charities, was dismissed, so far as it sought a removal of governors unlawfully elected, Sir William Grant saying: "This court, I apprehend, has no jurisdiction with regard either to the election or the amotion of corporators of any description." *Attorney General* v. *Clarendon*, 17 Ves. 491, 498.

In the courts of the several States, the power of a court of equity to restrain by injunction the removal of a municipal officer has been denied in many well considered cases.

Upon a bill in equity in the Court of Chancery of the State of New York by a lawfully appointed inspector of flour, charging that he had been ousted of his office by one unlaw-fully appointed in his stead by the governor, and that the new appointee was insolvent, and praying for an injunction, a receiver, and an account of fees, until the plaintiff's title to the office could be tried at law, Vice Chancellor McCoun said: "This court may not have jurisdiction to determine that question, so as to render a judgment or decree of ouster of the office;" but he overruled a demurrer, upon the ground that the bill showed a *prima facie* title in the plaintiff. *Tap-pan* v. *Gray*, 3 Edw. Ch. 450. On appeal, Chancellor Wal-worth reversed the decree, "upon the ground that at the time of the filing of this bill the Court of Chancery had no juris-

diction or power to afford him any relief." 9 Paige, 507, 509, 512. And the Chancellor's decree was unanimously affirmed by the Court of Errors, upon Chief Justice Nelson's statement that he concurred with the Chancellor respecting the jurisdiction of courts of equity in cases of this kind. 7 Hill, 259.

The Supreme Court of Pennsylvania has decided that an injunction cannot be granted to restrain a municipal officer from exercising an office which he has vacated by accepting another office, or from entering upon an office under an appointment by a town council, alleged to be illegal; but that the only remedy in either case is at law by *quo warranto*. *Hagner* v. *Heyberger*, 7 Watts & Serg. 104; *Updegraff* v. *Crans*, 47 Penn. St. 103.

The Supreme Court of Iowa, in a careful opinion delivered by Judge Dillon, has adjudged that the right to a municipal office cannot be determined in equity upon an original bill for an injunction. *Cochrane* v. *McCleary*, 22 Iowa, 75.

In *Delehanty* v. *Warner*, 75 Illinois, 185, it was decided that a court of chancery had no jurisdiction to entertain a bill for an injunction to restrain the mayor and aldermen of a city from unlawfully removing the plaintiff from the office of superintendent of streets, and appointing a successor; but that the remedy was at law by *quo warranto* or mandamus.

In *Sheridan* v. *Colvin*, 78 Illinois, 237, it was held that a court of chancery had no jurisdiction to restrain by injunction a city council from passing an ordinance unlawfully abolishing the office of commissioner of police; and the court, repeating in great part the opening propositions of Kerr on Injunctions, said : " It is elementary law, that the subject matter of the jurisdiction of a court of chancery is civil property. The court is conversant only with questions of property and the maintenance of civil rights. Injury to property, whether actual or prospective, is the foundation on which the jurisdiction rests. The court has no jurisdiction in matters merely criminal or merely immoral, which do not affect any right to property. Nor do matters of a political nature come within the jurisdiction of the Court of Chancery. Nor has the Court of Chan-

cery jurisdiction to interfere with the duties of any department of government, except under special circumstances, and when necessary for the protection of rights of property." 78 Illinois, 247.

Upon like grounds, it was adjudged in *Dickey* v. *Reed*, 78 Illinois, 261, that a court of chancery had no power to restrain by injunction a board of commissioners from canvassing the results of an election; and that orders granting such an injunction, and adjudging the commissioners guilty of contempt for disregarding it, were wholly void. And in *Harris* v. *Schryock*, 82 Illinois, 119, the court, in accordance with its previous decisions, held that the power to hold an election was political and not judicial, and therefore a court of equity had no authority to restrain officers from exercising that power.

Similar decisions have been made, upon full consideration, by the Supreme Court of Alabama, overruling its own prior decisions to the contrary. *Beebe* v. *Robinson*, 52 Alabama, 66; *Moulton* v. *Reid*, 54 Alabama, 320.

The statutes of Nebraska contain special provisions as to the removal of officers of a county or of a city.

" All county officers, including justices of the peace, may be charged, tried and removed from office for official misdemeanors" of certain kinds, by the board of county commissioners, upon the charge of any person. "The proceeding shall be as nearly like those in other actions as the nature of the case admits, excepting where otherwise provided in this chapter." "The complaint shall be by an accuser against the accused, and shall contain the charges with the necessary specifications under them, and be verified by the affidavit of any elector of the State that he believes the charges to be true." No formal answer or replication is required; "but if there be an answer and reply, the provisions of this [the?] statute relating to pleadings in actions shall apply." "The questions of fact shall be tried as in other actions, and if the accused is found guilty, judgment shall be entered, removing the officer from his office, and declaring the latter vacant, and the clerk shall enter a copy of the judgment in the election book." Nebraska Comp. Stat. c. 18, art. 2.

The nature of this proceeding before county commissioners has been the subject of several decisions by the Supreme Court of the State.

In the earliest one, the court declared : " The proceeding is *quasi* criminal in its nature, and the incumbent undoubtedly may be required to appear without delay and show cause why he should not be removed. But questions of fact must be tried as in other actions, and are subject to review on error. The right to a trial upon distinct and specific charges is secured to every one thus charged with an offence for which he is liable to be removed from office." " Neither is it sufficient for the board to declare and resolve that the office is vacant. There must be a judgment of ouster against the incumbent." *State* v. *Sheldon,* 10 Nebraska, 452, 456.

The authority conferred upon county commissioners to remove county officers has since been held not to be an exercise of strictly judicial power, within the meaning of that provision of the Constitution of Nebraska, which requires that " the judicial power of this state shall be vested in a supreme court, district courts," and other courts and magistrates therein enumerated. Constitution of Nebraska, art. 6, § 1; *State* v. *Oleson,* 15 Nebraska, 247. But it has always been considered as so far judicial in its nature, that the order of the county commissioners may be reviewed on error in the district court of the county, and ultimately in the Supreme Court of the State. *State* v. *Sheldon,* above cited; *Minkler* v. *State,* 14 Nebraska, 181; *State* v. *Meeker,* 19 Nebraska, 444, 448. See also *Sioux City & Pacific Railroad* v. *Washington County,* 3 Nebraska, 30, 41; Nebraska Code of Civil Procedure, §§ 580–584, 599; Criminal Code (ed. 1885), § 572.

This view does not substantially differ from that taken in other States, where similar orders have been reviewed by writ of *certiorari,* as proceedings of an inferior tribunal or board of officers, not commissioned as judges, yet acting judicially, and not according to the course of the common law. *Charles* v. *Mayor &c. of Hoboken,* 3 Dutcher, 203; *People* v. *Fire Commissioners,* 72 N. Y. 445; *Donahue* v. *County of Will,* 100 Illinois, 94.

In Nebraska, as elsewhere, the validity of the removal of a public officer, and the title of the person removed, or of a new appointee, to the office, may be tried by *quo warranto* or mandamus. Nebraska Comp. Stat. c. 19, §§ 13, 24; c. 71; Code of Civil Procedure, §§ 645, 704; *Cases of Sheldon, Oleson,* and *Meeker,* above cited; *The Queen* v. *Saddlers' Co.,* 10 H. L. Cas. 404; *Osgood* v. *Nelson,* L. R. 5 H. L. 636.

The provisions of the statutes of Nebraska as to the removal of officers of cities of the first class (of which the city of Lincoln is one) are more general, simply conferring upon the mayor and council "power to pass any and all ordinances not repugnant to the Constitution and laws of the State, and such ordinances to alter, modify, or repeal;" and "to provide for removing officers of the city for misconduct;" and to fill any vacancy, occurring in the office of police judge or other elective office, by appointment by the mayor with the assent of the council. Nebraska Comp. Stat. c. 13, §§ 11, 15; Stat. 1887, c. 11, §§ 8, 68, 114.

The original ordinance of the city council of Lincoln, made part of the record, appears to have been framed with the object that the rules established by statute for conducting proceedings for the removal of county officers should be substantially followed in the removal of city officers elected by the people.

After ordaining that whenever any such officer "shall be guilty of any wilful misconduct or malfeasance in office, he may be removed by a vote of two thirds of all the members elected to the council," it provides that no such officer shall be removed unless "charges in writing, specifying the misconduct or nature of the malfeasance, signed by the complainant, and giving the name of at least one witness besides the complainant, to support such charges, shall be filed with the city clerk, president of the council, or mayor," and be read at a regular meeting of the council, and a certified copy thereof, with a notice to show cause against the removal, be served upon the officer five days before the next meeting; that if he does not then appear, and file a denial in writing, "the said charge and specifications shall be taken as true, and the council shall

declare the office vacant;" but if he does, the council shall adjourn to some day for his trial, "and if upon the trial of said officer said council shall be satisfied that he is guilty of any misconduct wilfully, or malfeasance in office, they shall cause such finding to be entered upon their minutes, and shall declare said office vacant, and shall proceed at once to fill such vacancy in the manner provided by statute and ordinance;" and that all proceedings and notices in the matter of such charges may be served by the city marshal or by a policeman, and the "service and return shall be in the manner provided by law for the service of summonses in justice's courts."

The only material change made in that ordinance by the ordinance of August 24 is, that the trial of the officer and the finding of his guilt may be either by the whole council, or by a "committee of the council, to whom such charges shall have been referred." In either case, the finding is to be entered upon the minutes of the council, "and the council shall declare the said office vacant and the said officer removed therefrom," and certify the fact to the mayor, whereupon the vacancy shall be filled by appointment by the mayor with the assent of the council.

The whole object of the bill in equity filed by Parsons, the police judge of the city of Lincoln, against the mayor and councilmen of the city, upon which the Circuit Court of the United States made the order, for the disregard of which they are in custody, is to prevent his removal from the office of police judge. No question of property is suggested in the allegations of matters of fact in the bill, or would be involved in any decree that the court could make thereon.

The case stated in the bill is, that charges in writing against Parsons for appropriating to his own use moneys of the city were filed, as required by the original ordinance, by Sheedy and Saunders; (Hyatt not otherwise named in those charges, would seem to have signed them as the additional witness required by that ordinance;) that the charges were referred by the mayor to a committee of three members of the council; that upon notice to the accused, and his appearance before that committee, he objected that the committee had no

authority to try the charges, and the committee so reported to the council; that thereupon Sheedy and Saunders procured the passage of the amended ordinance, giving a committee, instead of the whole council, power to try the charges and report its finding to the council; that after the passage of this ordinance, and against his protest, the committee resumed the trial, and, in order to favor and protect his accusers, and fraudulently to obtain his removal from office, made a report to the city council, falsely stating that they reported all the evidence, and fraudulently suppressing a book which he had offered in evidence, and finding him guilty, and recommending that his office be declared vacant, and be filled by the appointment of some other person; and that the mayor and city council set the matter down for final vote at a future day named, and threatened and declared that they would then, without hearing or reading the evidence taken before the committee, declare the office vacant and appoint another person to fill it.

The bill prays for an injunction to restrain the mayor and councilmen of the city of Lincoln from proceeding any further with the charges against Parsons, or taking any vote on the report of the committee, or declaring the office of police judge vacant, or appointing any person to fill that office.

The matters of law suggested in the bill as grounds for the intervention of the Circuit Court are, that the amended ordinance was an *ex post facto* law, and that all the proceedings of the city council and its committee, as well as both ordinances, were illegal and void, and in conflict with and violation of those articles of the Constitution of the United States which provide that no person shall be deprived of life, liberty or property, without due process of law; that in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district where the crime shall have been committed, and to have compulsory process for obtaining witnesses in his favor; and that no State shall pass any *ex post facto* law; or deprive any person of life, liberty or property, without due process of law; or deny to any person within its jurisdiction the equal protection of the laws.

The Fifth and Sixth Amendments to the Constitution of the United States, which provide that no person shall be deprived of life, liberty or property without due process of law, and secure to the accused in criminal prosecutions trial by jury, and compulsory process for obtaining witnesses in his favor, apply to the United States only, and not to laws or proceedings under the authority of a State. *Spies* v. *Illinois*, 123 U. S. 131. And that provision of the Constitution, which prohibits any State to pass *ex post facto* laws, applies only to legislation concerning crimes. *Calder* v. *Bull*, 3 Dall. 386.

If the ordinances and proceedings of the city council are in the nature of civil, as distinguished from criminal proceedings, the only possible ground, therefore, for the interposition of the courts of the United States in any form is that Parsons, if removed from the office of police judge, will be deprived by the State of life, liberty or property without due process of law, in violation of the Fourteenth Amendment to the Constitution, or that the State has denied him the equal protection of the laws, secured by that Amendment.

It has been contended by both parties in argument, that the proceeding of the city council for the removal of Parsons upon the charges filed against him is in the nature of a criminal proceeding; and that view derives some support from the judgment of the Supreme Court of Nebraska in *State* v. *Sheldon*, 10 Nebraska, 452, 456, before cited. But if the proceeding is of a criminal nature, it is quite clear, for the reasons and upon the authorities set forth in the earlier part of this opinion, that the case stated in the bill is wholly without the jurisdiction of any court of equity.

If those proceedings are not to be considered as criminal or *quasi* criminal, yet if, by reason of their form and object, and of the acts of the legislature and decisions of the courts of Nebraska as to the appellate jurisdiction exercised in such cases by the judicial power of the State, they are to be considered as proceedings in a court of the State, (of which we express no decisive opinion,) the restraining order of the Circuit Court was void, because in direct contravention of the peremptory enactment of Congress, that the writ of injunction

shall not be granted by any court of the United States to stay proceedings in any court of a State, except when authorized by a bankrupt act. Act of March 2, 1793, c. 22, § 5, 1 Stat. 335; *Diggs* v. *Wolcott*, 4 Cranch, 179; *Peck* v. *Jenness*, 7 How. 612, 625; Rev. Stat. § 720; *Watson* v. *Jones*, 13 Wall. 679, 719; *Haines* v. *Carpenter*, 91 U. S. 254; *Dial* v. *Reynolds*, 96 U. S. 340; *Sargent* v. *Helton*, 115 U. S. 348.

But if those proceedings are to be considered as neither criminal nor judicial, but rather in the nature of an official inquiry by a municipal board entrusted by law with the administration and regulation of the affairs of the city, still, their only object being the removal of a public officer from his office, they are equally beyond the jurisdiction and control of a court of equity.

The reasons which preclude a court of equity from interfering with the appointment or removal of public officers of the government from which the court derives its authority apply with increased force when the court is a court of the United States and the officers in question are officers of a State. If a person claiming to be such an officer is, by the judgment of a court of the State, either in appellate proceedings or upon a mandamus or *quo warranto*, denied any right secured to him by the Constitution of the United States, he can obtain relief by a writ of error from this court.

In any aspect of the case, therefore, the Circuit Court of the United States was without jurisdiction or authority to entertain the bill in equity for an injunction.

As this court has often said: "Where a court has jurisdiction, it has a right to decide every question which occurs in the cause; and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other court. But if it act without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void." *Elliott* v. *Peirsol*, 1 Pet. 328, 340; *Wilcox* v. *Jackson*, 13 Pet. 498, 511; *Hickey* v. *Stewart*, 3 How. 750, 762; *Thompson* v. *Whitman*, 18 Wall. 457, 467.

We do not rest our conclusion in this case, in any degree, upon the ground, suggested in argument, that the bill does

not show a matter in controversy of sufficient pecuniary value to support the jurisdiction of the Circuit Court; because an apparent defect of its jurisdiction in this respect, as in that of citizenship of parties, depending upon an inquiry into facts which might or might not support the jurisdiction, can be availed of only by appeal or writ of error, and does not render its judgment or decree a nullity. *Prigg* v. *Adams*, 2 Salk. 674; *S. C.* Carthew, 274; *Fisher* v. *Bassett*, 9 Leigh, 119, 131–133; *Des Moines Navigation Co.* v. *Iowa Homestead Co.*, 123 U. S. 552.

Neither do we say that, in a case belonging to a class or subject which is within the jurisdiction both of courts of equity and of courts of law, a mistake of a court of equity, in deciding that in the particular matter before it there could be no full, adequate and complete remedy at law, will render its decree absolutely void.

But the ground of our conclusion is, that, whether the proceedings of the city council of Lincoln for the removal of the police judge, upon charges of misappropriating moneys belonging to the city, are to be regarded as in their nature criminal or civil, judicial or merely administrative, they relate to a subject which the Circuit Court of the United States, sitting in equity, has no jurisdiction or power over, and can neither try and determine for itself, nor restrain by injunction the tribunals and officers of the State and city from trying and determining.

The case cannot be distinguished in principle from that of a judgment of the Common Bench in England in a criminal prosecution, which was *coram non judice;* or the case of a sentence passed by the Circuit Court of the United States upon a charge of an infamous crime, without a presentment or indictment by a grand jury. *Case of the Marshalsea*, 10 Rep. 68, 76; *Ex parte Wilson*, 114 U. S. 417; *Ex parte Bain*, 121 U. S. 1.

The Circuit Court being without jurisdiction to entertain the bill in equity for an injunction, all its proceedings in the exercise of the jurisdiction which it assumed are null and void. The restraining order, in the nature of an injunction, it had no power to make. The adjudication that the defendants were

guilty of a contempt in disregarding that order is equally void, their detention by the marshal under that adjudication is without authority of law, and they are entitled to be discharged. *Ex parte Rowland*, 104 U. S. 604; *Ex parte Fisk*, 113 U. S. 713; *In re Ayers*, 123 U. S. 443, 507.

*Writ of habeas corpus to issue.*

MR. JUSTICE FIELD, concurring.

I concur in the judgment of this court, that the Circuit Court of the United States had no jurisdiction to interfere with the proceedings of the mayor and common council of Lincoln for the removal of the police judge of that city. The appointment and removal of officers of a municipality of a State are not subjects within the cognizance of the courts of the United States. The proceedings detailed in the record in the present case were of such an irregular and unseemly character, and so well calculated to deprive the officer named of a fair hearing, as to cause strong comment. But, however irregular and violent, the remedy could only be found under the laws of the State and in her tribunals. The police judge did not hold his office under the United States, and in his removal the common council of Lincoln violated no law of the United States. On no subject is the independence of the authorities of the State, and of her municipal bodies, from federal interference in any form, more complete than in the appointment and removal of their officers.

I concur also in what is said in the opinion of the court as to the want of jurisdiction of a court of equity over criminal proceedings, but do not perceive its application to the present case. The proceedings before the common council were not criminal in the sense to which the principle applies. That body was not a court of justice, administering criminal law, and it is only to criminal proceedings in such a tribunal that the authorities cited have reference. In many cases proceedings, criminal in their character, taken by individuals or organized bodies of men, tending, if carried out, to despoil one of his property or other rights, may be enjoined by a court of equity.

MR. CHIEF JUSTICE WAITE, dissenting.

I am not prepared to decide that an officer of a municipal government cannot, under any circumstances, apply to a court of chancery to restrain the municipal authorities from proceeding to remove him from his office without the authority of law. There may be cases, in my opinion, when the tardy remedies of *quo warranto*, *certiorari*, and other like writs will be entirely inadequate. I can easily conceive of circumstances. under which a removal, even for a short period, would be productive of irremediable mischief. Such cases may rarely occur, and the propriety of such an application may not often be seen; but if one can arise, and if the exercise of the jurisdiction can ever be proper, the proceedings of the court in due course upon a bill filed for such relief will not be void, even though the grounds on which it is asked may be insufficient. If the court can take jurisdiction of such a case under any circumstances, it certainly must be permitted to inquire, when a bill of that character is filed, whether the case is one that entitles the party to the relief he asks, and, if necessary to prevent wrong in the mean time, to issue in its discretion a temporary restraining order for that purpose. Such an order will not be void, even though it may be found on examination to have been improvidently issued. While in force it must be obeyed, and the court will not be without jurisdiction to punish for its contempt. Such, in my opinion, was this case, and I, therefore, dissent from the judgment which has been ordered.

MR. JUSTICE HARLAN, dissenting.

I concur in the views expressed by the Chief Justice, and unite with him in dissenting from the opinion and judgment of the court.

The proceedings inaugurated by the defendants against Parsons are certainly not of a criminal nature; nor are they embraced by the provision of the statute which declares that " the writ of injunction shall not be granted by any court

of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy." Rev. Stat. § 720.

The act of March 3, 1887, declares that the Circuit Courts of the United States shall have original cognizance, concurrent with the courts of the several States, of all suits of a civil nature, at common law or in equity, arising under the Constitution of the United States.

Parsons' suit is, confessedly, of a civil nature; and it proceeds upon the ground that what the defendants propose to do will violate rights secured to him by the Constitution of the United States. It is, therefore, a suit arising under the Constitution of the United States. Whether the Circuit Court, sitting *in equity*, could properly grant to the plaintiff the relief asked is not a question of jurisdiction within the rule that orders, judgments, or decrees are void, where the court, which passed them, was without jurisdiction. It is rather a question as to the exercise of jurisdiction. As this suit is one arising under the Constitution of the United States, and is of a civil nature, the inquiry in the mind of the Circuit Judge, when he read the bill, was whether, according to the principles of equity, a decree could be properly rendered against the defendants? *Osborn* v. *Bank of the United States*, 9 Wheat. 738, 858.

The statute provides that "suits in equity shall not be sustained in either of the courts of the United States in any case where a plain, adequate, and complete remedy may be had at law." But if one of those courts should render a final decree, in behalf of the plaintiff, notwithstanding he had a plain, adequate, and complete remedy at law, would the decree be a nullity? Could it be assailed, collaterally, as void, upon the ground that no case was made justifying relief in equity? When a party has disregarded a preliminary injunction issued by a Circuit Court of the United States, has been fined for contempt, and is in custody for failing to pay the fine, must he be discharged upon *habeas corpus* in every case where it appears, upon the face of the bill, that the plaintiff has a plain, adequate, and complete remedy at law? Those questions, it

seems to me, should receive a negative answer. I do not understand the court to decide that the Circuit Court could not, under any circumstances, or by any mode of proceeding, enforce the rights which the plaintiffs contend are about to be violated by the defendants; but only, that the court below, sitting in equity, had no authority to interfere with the proposed action of the defendants. It seems to me that this question would properly arise upon appeal from any final decree rendered in the cause, and is not determinable upon writ of *habeas corpus.*

Upon the delivery of the opinions in this case, *Mr. Attorney General* stated to the court, in open court, that he would take notice of the order awarding the writ, and that he would order the discharge of the prisoners, without requiring the issue of the writ.