2009 OK CIV APP 69

STATE of Oklahoma, Plaintiff/Appellant,

v.

TWIN C CONVENIENCE STORE, 1530 S. Agnew Avenue, Oklahoma City, Oklahoma, and Gary Lee Chrisman, Jr., Owner and Operator of Twin C and Owner of Machines on Premises, Defendants/Appellees.

No. 106,207.

Court of Civil Appeals of Oklahoma, Division No. 3.

Aug. 7, 2009.

John M. Jacobsen, Assistant District Attorney, Oklahoma City, OK, for Appellant.

Steven Huddleston, Huddleston, Pike, Henderson & Parker, Oklahoma City, OK, for Appellees.

LARRY JOPLIN, Judge.

¶ 1 Plaintiff/Appellant State of Oklahoma (State) seeks review of the trial court's order granting the motion to dismiss of Defendants/Appellees Twin C Convenience Store, 1530 S. Agnew Avenue, Oklahoma City, Oklahoma, and Gary Lee Chrisman, Jr., Owner and Operator of Twin C and Owner of Machines on Premises (collectively, Defendants), on State's claim for a declaratory judgment. In this appeal, State challenges the trial court's order as affected by error of law.

¶ 2 In 2007, the Oklahoma City Police Department began an investigation to determine whether certain telephone calling card vending machines, owned and operated by Defendants, were actually illegal gambling devices. Concluding that the machines were indeed gambling devices, and operated in violation of 21 O.S. § 941, et seq., the police referred the matter to the Oklahoma County District Attorney.

¶ 3 Despite statutory authority to prosecute "every person who ... carries on ... any gambling game," [1] to seek the imposition of penalties on owners of real estate where gambling games are carried on,[2] to seek and obtain abatement of nuisances by injunction,[3] and to seize any suspected gambling device,[4] the Oklahoma County District Attorney, acting on behalf of the State of Oklahoma, chose

none of these remedies. Rather, and claiming its "responsibility to prosecute and uphold all lawful statutes ... including but not limited to the Gambling Laws of the State of Oklahoma," the District Attorney chose an unusual course and commenced the instant action *for declaratory judgment.*

¶ 4 In seeking to invoke the district court's equitable power, State alleged that the vending machine owned by and operated by Defendant Chrisman at Defendant convenience store constituted a "gambling device," and that the "owners of convenience stores ... who have these machines on their business premises are guilty of violating the gambling laws of" this state. On these allegations, State requested a judicial declaration that "use of these machines, possession of these machines, the operation of these machines and persons connected with allowing these machines to be played and *people who play these machines* are in violation of Oklahoma gambling laws." (Emphasis added.) State also requested an adjudication that these machines were subject to seizure as illegal slot machines.

¶ 5 Defendant filed a motion to dismiss, arguing that a "civil court sitting in equity does not have the power to interpret whether certain acts or devices fall within the context of penal provisions of statutes." State responded, arguing declaratory relief was properly sought.

¶ 6 Upon consideration of the parties' briefs and arguments, the trial court granted Defendant's motion to dismiss, finding no "jurisdiction to decide this matter under Oklahoma's Declaratory Judgment Act." State appeals, and the matter stands submitted for accelerated review on the trial court

---

1.  21 O.S. § 941.

2.  21 O.S. § 945.

3.  21 O.S. § 972 ("Every slot machine and every punch board as defined in this act, is hereby declared to be per se a gambling device, and each is hereby declared to be a public nuisance, and the same may be abated in manner as provided for the abatement of a public nuisance....")

4.  21 O.S. § 960 ("Every person who is authorized or enjoined to arrest any person for a violation of the provisions of this article, is equally authorized and enjoined to seize any table, cards, dice, or other articles or apparatus suitable to be used for gambling purposes found in the possession or under the control of the person so arrested, and to deliver the same to the magistrate before whom the person so arrested is required to be taken.")

record.[5]

¶ 7 We review an order of the trial court granting a motion for summary judgment or a motion to dismiss *de novo*. *See, e.g., Reeds v. Walker*, 2006 OK 43, ¶ 9, 157 P.3d 100, 106–107; *Estate of Hicks ex rel. Summers v. Urban East, Inc.*, 2004 OK 36, ¶ 5, 92 P.3d 88, 90. The question of jurisdiction under the Declaratory Judgment Act presents an issue of law, also subject to *de novo* review. *See, e.g., Deleon v. Avery*, 2007 OK CIV APP 91, ¶ 8, 170 P.3d 1043, 1045; *Cherokee Nation v. Nomura*, 2007 OK 40, ¶ 11, 160 P.3d 967, 972.

¶ 8 In seeking the trial court's equitable power merely to enforce Oklahoma's penal gambling laws, the State's quest was destined to fail. Indeed, long before the Declaration of Independence, it was well-settled that a court of equity had no jurisdiction over criminal proceedings. *In re Sawyer, et al.*, 124 U.S. 200, 210, 8 S.Ct. 482, 488, 31 L.Ed. 402 (1888). This rule was founded primarily on the principle that a legislature possessed the authority to define the rights of its citizenry, and to prescribe the rules by which those rights would be determined. *Callison v. Kirkpatrick*, 1930 OK 431, ¶ 0(2), 145 Okla. 132, 292 P. 54. And, where a legislature provided a plain, speedy and adequate legal remedy for the vindication of those rights, a court of equity would not intervene to grant relief. *Callison*, 1930 OK 431, ¶¶ 0(2), 10, 145 Okla. 132, 292 P. 54, 56.

¶ 9 Over the years, there have been rare instances where, in the exercise of its equity powers, courts have enjoined certain prosecutions or the commission of acts that constituted a crime. However, in so doing, the court exercised no jurisdiction over the *legal* criminal matter, but rather exercised its *equitable* jurisdiction to protect some right which only *equity* could protect.

¶ 10 Historically, equity has intervened in matters concerning penal statutes in two distinct and separate instances. The first involves a defendant or potential defendant seeking equity's protection, and the other involves the state seeking equity's remedies.

¶ 11 The jurisdiction of a court of equity may be "enlarged by express statute." *In re Sawyer, et al.*, 124 U.S. at 210, 8 S.Ct. at 487. But, absent such legislative enlargement, the jurisdiction of a court of equity is ordinarily "confined to the protection of rights of property." *Callison*, 1930 OK 431, ¶ 10, 145 Okla. 132, 292 P. at 56; *In re Sawyer, et al.*, 124 U.S. at 210, 8 S.Ct. at 487.

¶ 12 In carrying out its duty to protect property rights, it soon developed that a court of equity in this state could enjoin the enforcement of a criminal statute against an individual "if and when he proves that the ordinances he seeks to avoid were invalid, and, in addition thereto, that the enforcement thereof would destroy property rights and inflict irreparable injury." *Whitson v. City of Cherokee*, 1935 OK 650, ¶ 8, 173 Okla. 208, 46 P.2d 907, 908. However, "*[t]hese three essential elements must exist together in order for equity to assume jurisdiction.*" *Id.* (Emphasis added.) "One of the main reasons for the restrictive rule as to when it is appropriate for equity to enjoin pending or threatened prosecution under a criminal statute is based on the separation of powers doctrine, i.e., the judiciary should be reluctant to unnecessarily interfere in the workings of the other two branches of government, the executive and legislative, in the exercise of their authority/power." *Edmondson v. Pearce*, 2004 OK 23, ¶ 15, 91 P.3d 605, 613–614. (Citations omitted.) So, "[b]efore a court may enjoin the enforcement of a criminal statute, exceptional circumstances must be shown." *Id.*

¶ 13 Even though a court of equity may restrain the *enforcement* of a criminal law, does it necessarily follow that the State may invoke equity to restrain the *commission* of criminal acts? "The ... general principle is that equity does not exercise jurisdiction to enjoin the commission of crimes...." *Schmoldt v. Oakley*, 1964 OK 61, ¶ 6, 390 P.2d 882, 883.

---

**5.** See, Rules 4(m), 13(h), Rules for District Courts, 12 O.S., Ch. 2, App.; Ok.S.Ct.R. 1.36, 12 O.S., Ch. 15, App.

¶ 14 That said, the legislature may, by statute, authorize a court of equity to enjoin or restrain certain conduct, even though the conduct might otherwise constitute a violation of some criminal law. As the Oklahoma Supreme Court recognized:

> [W]here an injunction is otherwise warranted, the court may enjoin certain acts affecting rights, property and general welfare of people even though such acts are also criminal offenses.

*Anderson v. Trimble,* 1974 OK 2, ¶ 23, 519 P.2d 1352, 1356. (Emphasis added.)

¶ 15 Most often, injunctions are sought by the state in cases of public nuisance or the unlawful conduct of a business without a license. So, we find authority both imposing criminal fines and penalties and granting equitable, injunctive relief for the same acts, particularly, the unauthorized practice of law, medicine, dentistry and other professions in order to protect the general welfare of the people.[6]

¶ 16 Also, relevant here, the operation of gambling devices may be both punished as a crime under 21 O.S. § 941, et seq., and also enjoined as a public nuisance:

> Every slot machine and every punch board as defined in this act, is hereby declared to be per se a gambling device, and each is hereby declared to be a public nuisance, and the same may be abated in manner as provided for the abatement of a public nuisance....

21 O.S. § 972. As elsewhere provided: "The remedies against a public nuisance are: 1. Indictment or information, or, 2. A civil action, or, 3. Abatement." 50 O.S. § 8.

¶ 17 These statutorily authorized equitable remedies, in situations such as this, are, of course, *in addition* to the specific criminal statutes concerning gambling, and thus:

> .... Under ordinary circumstances a complete and adequate remedy for the violation of the criminal statutes of a state and of municipal ordinances is afforded by the

courts of law, and, *if a criminal prosecution will constitute an effectual protection against the acts or omissions complained of, no grounds exist for relief by injunction.*

43A C.J.S., Injunctions, § 276 (West 2009). (Emphasis added.) This is true because "the criminal statute is itself a command not to do the unlawful act, and no further injunction is warranted or appropriate." Id.

¶ 18 Additionally, an injunction will never issue merely to prevent the violation of a penal statute. *Anderson,* 1974 OK 2, ¶ 23, 519 P.2d at 1356; *Schmoldt,* 1964 OK 61, ¶ 6, 390 P.2d at 883. Rather, "where the intervention of equity by injunction is warranted by the necessity of protection to civil rights or property interests, the mere fact that a crime or statutory offense must be enjoined, as *incidental thereto,* will not operate to deprive the court of its jurisdiction." *Choctaw Pressed Brick Co. v. Townsend,* 1925 OK 153, ¶ 0(3), 108 Okla. 235, 236 P. 46. (Emphasis added.) Stated another way:

> .... [T]he underlying principle ... is that the government may enjoin certain acts which constitute a crime or a violation of the criminal laws, not because the act sought to be enjoined is a crime, but *in spite of the fact that it is a crime.* That is to say, when a governmental agency seeks to invoke equitable jurisdiction to protect by injunction some right, or to remedy a wrong, the inquiry, just as it is in the case of an individual invoking such relief, is. Do the facts presented show the need of equitable intervention for the protection of rights cognizable by equity? An affirmative answer to this query justifies the issuance of the injunction, *although incidentally its promulgation will restrain the commission of a crime.*
>
> . . . .
>
> .... In other words, criminality neither affords a basis for, nor does it oust, the jurisdiction of the chancery court.

---

6. See, e.g., 59 O.S. § 15.27 (Accountants); 59 O.S. § 46.17 (Architects); 5 O.S. § 12 (Attorneys); 3A O.S. § 615 (Boxers); 59 O.S. § 161.14 (Chiropractors); 59 O.S. § 328.49 (Dentists); 59 O.S. § 1695 (Electricians and Electrical Contractors); 59 O.S. §§ 731.3, 738.4 (Healing Arts); 59 O.S. § 1850.11 (Mechanical Contractors); 59 O.S. § 1019 (Plumbers and Plumbing Contractors); 59 O.S. § 1911 (Professional Counselors); 59 O.S. § 858–401 (Real Estate Brokers and Agents); 17 O.S. § 158.58 (Rural Electric Cooperatives); 59 O.S. § 698.14a (Veterinary).

"Jurisdiction, at the instance of governmental agency, to enjoin an act amounting to a crime," 91 A.L.R. 315, 316, 317 (1934). (Emphasis added.)

¶ 19 In the instant case, the State did not seek an equitable remedy for the protection of any right cognizable in equity. Rather, the State requested the court to *declare* "such machines to be gambling devices and that the owners of convenience stores or other establishments who have these machines on their business premises are guilty of violating the gambling laws of the State of Oklahoma and ... persons connected with allowing these machines to be played and people who play these machines are in violation of Oklahoma's gambling laws."

¶ 20 Because the enforcement of Oklahoma's penal gambling laws was the sole purpose of this action, and was not merely a by-product of otherwise warranted equitable relief, the trial court had no jurisdiction to grant relief. This is so because:

> [A] court of equity will not pass upon the issues if the identical issue sought to be passed upon by equity is one which must be passed upon by the criminal court. We think this [is] true for obvious reasons. The criminal court is formed for, and is equipped to pass upon, that issue which is peculiarly within its jurisdiction, and we think it would be stretching the doctrine too far to fasten upon the court of equity the duty of determining, in effect, the guilt or innocence of a party charged under a valid statute with a criminal offense, before his arrest or arraignment or plea in the court of criminal jurisdiction.

*Callison*, 1930 OK 431, ¶ 22, 145 Okla. 132, 292 P. at 59.

¶ 21 Yet, here, the circumvention of the criminal justice system, with all its safeguards and procedures, is precisely what the State seeks. State argues that the Declaratory Judgment Act permits relief "in cases of actual controversy, [to] determine rights, status, or other legal relations, including ... a determination of the construction or validity of ... any statute." 12 O.S. § 1651. Thus,

State asks a trial court, sitting in equity, to "declare" that certain conduct is criminal and subject to punishment.

¶ 22 If the State's argument were correct, it does not take much imagination to see there would be no end to the mischief.[7] Fortunately, the Oklahoma Supreme Court settled this issue thirty-five years ago in *Anderson v. Trimble.* There, the Court recognized " '[t]he Uniform Declaratory Judgments Act ... did not change the rules respecting jurisdiction of courts of equity to construe penal statutes or ordinances....' " *Anderson*, 1974 OK 2, ¶ 14, 519 P.2d at 1355. (Citation omitted.)

¶ 23 In Oklahoma, prior to adoption of the Declaratory Judgments Act, a court, sitting in equity, had no jurisdiction to enjoin otherwise criminal conduct *if* there existed an adequate legal remedy, *or,* the action was commenced merely to enforce the criminal law. The Declaratory judgment Act did not enlarge or extend the jurisdiction of equity, and "was not intended to grant jurisdiction to district courts to grant declaratory judgments construing, or determining the validity of penal statutes *in situations other than those wherein injunctive relief would have been appropriate prior to enactment of the statute.*" *Anderson*, 1974 OK 2, ¶ 15, 519 P.2d at 1355. (Emphasis added.)

¶ 24 In the present case, State sought to enforce Oklahoma law governing gambling devices by having these machines "declared" illegal and the owners "guilty" of the gambling laws. However, the construction of this state's penal, gambling laws is beyond the reach of the equitable jurisdiction underlying the Declaratory Judgment Act. Having failed to properly invoke the trial court's equitable jurisdiction, we hold the trial court did not err in dismissing State's declaratory judgment action. The order of the trial court is AFFIRMED.

HANSEN, P.J., dissents, and MITCHELL, C.J., concurs.

---

7. For example, State's position would affect the burdens of proof, the right to jury trial and other constitutionally guaranteed rights in criminal matters.