(Hamilton County Common Pleas Court.)

## JOHN ZUMSTEIN et al. v. GUSTAV TAFEL, MAYOR.

1. Charges of neglect of duty and misconduct in office preferred under Rev. Stat., 2690m, must be specifically stated with substantial certainty; yet the technical nicety required in indictments is not necessary.

2. Although such charges are insufficient in law and are so defective that they can not be made the foundation of an order of removal by the mayor, nevertheless, a court

of chancery will not issue an order of injunction to restrain the mayor from hearing the charges, and, if he concludes to do so, removing incumbents from office.

3. There is a full and adequate remedy at law in either mandamus or quo warranto, depending upon circumstances and what action the mayor may take, if any.

JELKE, J.

From the evidence in this case, made up by the petition, which is sworn to positively by Mr. John Zumstein, the affidavit of the defendant, his Honor, Mayor Tafel, the defendant's oral testimony on the witness stand, the testimony of Mr. F. A. Armstrong and Mr. Keneth C. Kerr, and the subpoena put in evidence, I find the following facts to have existed on the morning of Wednesday, the 18th day of August, 1897, at the time application was made to this court for the temporary restraining order granted herein.

1. The charges set out in the petition as subscribed by E. C. Coppin et al., had been filed with the Hon. Gustav Tafel, mayor of the city of Cincinnati.

2. On August 6, Mayor Tafel had transmitted a copy of said charges to each of the plaintiffs herein, and notified each of them to be present at the mayor's offfice at the city building, on Wednesday. August 18th, at 11 oc'lock a. m., when said charges would be investigated.

3. On Monday, August 16, the members of the Board of Supervisors, plaintiffs herein, by their counsel, applied to the mayor to dismiss said charges, which application was in words as set out in the petition.

4. On Monday, August 16, after hearing argument the mayor took the application to dismiss under advisement.

5. On said Monday, August 16, the may or notified counsel to be in readiness to go into the hearing of said charges on Wednesday, August 18, at 11 o'clock a. m., and to come prepared for such hearing.

6. The mayor did not, on or about the 18th day of August, 1897, nor has he at any other time in express terms, refused the application of the plaintiffs to dismiss the charges referred to in the petition herein, as alleged in the petition herein.

7. Mayor Tafel did not, on the 18th of August, 1897, notify plaintiffs that he would proceed to hear evidence and act upon said charges on the 18th day of August, 1897, at 11 o'clock a. m.

8. Mayor Tafel had not formally announced any conclusionss as to the sufficiency of the charges.

9. It does not appear from the testimony whether or not he had made up his mind in this regard.

10. Whether Mayor Tafel had arrived at a settled opinion or not on the subject, he had not formally held and construed the requirements of the provisions of the Rev. Stats. referred to in said charges, and more particularly sec. 1740, Rev. Stats., as having

been a mandatory provision, requiring the Board of Supervisors every month to review and investigate the proceedings of the council of said city and of all the other departments of the corporation government.

11. Mayor Tafel did, on Tuesday, August 17, about 4 o'clock in the afternoon, say to Mr. Keneth C. Kerr and Mr. Holmes, that he would not give his decision on Wednesday morning upon the motion to disimss the charges, but that he would hold the decision in reserve until after all the evidence was in, and that the hearing of the charges would proceed.

12. Mayor Tafel did, on the 17th day of August, 1897, issue the subpoena to F. A Armstrong offered in evidence, thereby requiring the said F. A. Armstrong to attend, on the 18th day of August, A. D., 1897, at 11 o'clock a. m., in the mayor's office at the city building, in Cincinnati, before the Hon. Gustav Tafel, mayor of the city of Cincinnati, to testify as a witness in the matter of the charges preferred against the members of the Board of Supervisors of said city, and to bring with you the minutes of the said Board of Supervisors for the years 1891-2 3-4- 5 and 6; and if in addition to their minutes as a Board of Supervisors, said board kept other minutes as a Board of Revision, produce also such minutes of the Board of Revision; also produce all reports or copies of reports and documents pertaining to the investigations made by said board of the proceedings of the Board of Legislation or any other department of the corporation government of the city of Cincinnati, and not depart the mayor's office without leave.

13. I find that at the time Mayor Tafel issued this subpoena he had resolved and had a settled intention in his own mind to proceed to a hearing of the charges against the supervisors at 11 o'clock on the next day, Wednesday.

14. I find that at the time of this hearing, unless restrained, Mayor Tafel intended to proceed to an early hearing of the charges and to put plaintiffs herein on their defense as to such charges, without passing on their sufficiency, but reserving his decision in that regard until after hearing all the evidence.

These findings of fact seem to me to be fairly deducible from the testimony and without contradiction.

Growing out of these findings two questions of law arise:

1. Whether or not the charges preferred against the supervisors are sufficient in law—that is, whether if conceded to be true—they furnish a legal fonndation upon which the mayor can remove or take any other action in relation to these officers?

2. If such charges be found to be legally insufficient, can the mayor be restrained by the order of a court of chancery from proceeding to hear and determine the truth or falsity of such insufficient charges?

Taking all these charges in their order, the first charge is as follows: Said sec.

1720, of the Rev. Stats., provides that the board "shall meet as often as once in every month to review and investigate the proceedings in council, and of all the other departments of the corporation government. The undersigned hereby charge George Mortimer Roe, Louis Werner, John Zumstein, Richard Smith, Louis Krohn and John J. Sullivan, members of the Board of Supervisors of the city of Cinicnnati, jointly and severally, with neglect of duty as members of said board in this: that they failed to meet as often as once in every month to review and investigate the proceedings of council and of all other departments of the corporation government, and the undersigned aver that each of said members wholly or grossly neglected to review and investigate the proceedings of council and all other de partments of the corporation government, contrary to the provisions of the statutes commanding them to do so."

I am of opinion that this charge does not state a charge of neglect of duty or misconduct in office in contemplation of 2690m.

Sec. 1720 of the Rev. Stats., provides that the mayor, the president of the board of councilmen and the solicitor of the corporation, shall constitute a board of revision (now superseded by the board of supervisors,) to review and investigate the proceedings of the council and of all other departments for the corporation government, etc. Said section, after the word "revision" and before the words "to review," between two commas, contains the relative clause "which shall meet as often as once in every month." I am of opinion that this section of the statute makes it mandatory upon said board to meet once in every month, but the mandatory provision does not extend to review and investigate the proceedings of council and of all other departments of the corporation government.

This charge is drawn on a construction of this section of the statutes, which would make it mandatory upon the supervisors to review and investigate the proceedings of the council and of all other departments of the government as often as once in every month. This construction can not obtain for the following reasons:

1. It would not be in accord with the grammar and punctuation of the English language. It is not proper to separate the infinitive "to review" from its finite verb "meet" by a comma in a continuous sentence, as this must be to adopt the construction of the charge. The infinitive "to review" must refer back to the word "constitute" for its finite verb, and the effect of the two commas, the one after the word "revision" and the one after the word "must," is to make the clause "which shall meet as often as once in every month" parenthetical. This clause, however, I am of opinion, is in itself mandatory.

2. I am of opinion that the construction of the statute necessary to make this first charge a valid, legal charge, involves a physical impossibility. I do not hesitate to say from my knowledge of the municipal government of the city of Cincinnati, that it would not be possible for any board to make separate monthly examinations of each and every one of the twenty eight different departments within the period of one month.

3. An examination of the other provisions of the statutes and of the charter, discloses that the powers of investigation residing in the board of supervisors are concurrent with similar powers lodged in the auditor of the city and in the sinking fund trustees.

I am of opinion that it is the intention of sec. 1720, that the board of supervisors shall at all times maintain a continuous supervision of all the departments of the city government, and prosecute special investigation at such times and of such departments as in their discretion they deem necessary, or the necessity for which shall be called to their attention in a proper manner.

4. That I am correct in this construction, and as aiding in the construction of this section, I refer to the construction which has been put by actual practice upon this section by the officers themselves, and by all the officers of the city government with duties arising under this section, and the similar sections, which it superseded, ever since the year 1869, to-wit: to meet once in every month and to review and make the investigation provided for when and so often as in their judgment there was occasion therefor.

5. I am not aware, and am of opinion, that there is no provision in the law nor has any been made by the other departments of the city government to defray the enormous expense which would be entailed by employing the necessary accountants and clerks to conduct such monthly examinations as would be required by the construction placed upon this section by the charges.

The second charge is as follows: Sec. 1720 of the Rev. Stats., 'further provides that the said board shall report to council any and all irregularities which may be discovered in any of the departments, and they shall report whether any and what retrenchments in the expense of the corporation, and what improvement in any department of the corporation government can be made.

The undersigned further charges that: George Mortimer Roe, Louis Werner, John Zumstein, Richard Smith, Louis Krohn and John J. Sullivan, members of the board of supervisors of the city of Cincinnati, jointly and severally, wholly or grossly neglected to report to council, any and all irregularities which they might have discovered in any of the officers or employes of any of the departments of the city government, and that they failed to make any attempt to discover any such irregularities, and that they wholly or grossly failed to report any retrenchments in the expense of the corporation that might be made or any improvement in any of the departments of the corporation government that could be made, and wholly or grossly neglected to make any examination in ref-

erence to any of said subject matters.

I am of opinion that this charge charges nothing. To say that they neglected to report to council any and all irregularities, which they might have discovered, charges nothing in the absence of an averment that such irregularities existed, and were with reasonable diligence discoverable, and to charge that they failed to make any attempt to discover any such irregularities likewise charges nothing in the absence of an averment of specific irregularities which existed and were with reasonable diligence disoverable. Further, to charge that they failed to report any retrenchments that might be made or any improvement that could be made likewise charges nothing, because matters of retrenchment and improvement are peculialry matters of judgment and discretion, and because there is no averment that such retrenchment which could be made, or such improvements which could be made, existed to the knowledge of the supervisors, and were in their opinion necessary and proper.

The third charge: Said sec. 1720, further provides that the said board of supervisors in making an investigation provided for therein, shall have power to send for persons and papers, issue subpoenas, and enforce the attendance of witnesses, and to examine them under oath. The undersigned further charges that said George Mortimer Roe, Louis Werner, John Zumstein, Richard Smith, Louis Krohn and John J. Sullivan, members of the board of supervisors of the city of Cincinnati, jointly and severally neglected during their respective terms of office to make or attempt to make any investigations such as are provided for therein.

This charge recites the clause out of the section which confers on the board certain powers which they can exercise in prosecuting their investigations, but the charge does not aver any violation of this clause, nor is it indeed possible to violate the provisions of a clause of this kind.

The fourth charge is as follows: Sec. 1720 of the Rev. Stats. of Ohio, further provides that the said board of supervisors may employ at a fair compensation, competent accountants to examine any books, papers, contracts or other writings connected with any investigation, and that they may also expend not to exceed one thousand dollars in any one year in employing attorney and stenographer, and for other incidental expenses in the conduct of such investigation.

The undersigned further charge, that said George Mortimer Roe, Louis Werner, John Zumstein, Richard Smith, Louis Krohn and John J. Sullivan, members of the board of supervisors of the city of Cincinnati, jointly and severally neglected to employ competent accountants or any persons to examine any of the books, papers, contracts or other writings connected with any investigation or to make any investigation whatsoever during their respective terms

of office, contrary to said provision of the statute, which requires said board to make continuous or at least monthly examinations into such departments.

If there is anything in this charge it can not be under the clause from the statute therein cited. The word of the statute is plainly "may." That is leaving the employment and the number of employes, if any, and whether or not there should be any employes, to the discretion of the board of supervisors, and in the absence of a positive averment of the existence of a clear necessity and of an abuse of discretion in ignoring such necessity this charge can amount to nothing. Further, I do not know whether an appropriation was made beyond the one thousand dollars for attorney, stenographer and incidental expenses to pay for the services of such competent accountants as might have been deemed necessary.

The last of these charges is as follows: The undersigned allege, that although the board of revision, the predecessor of the board of supervisors, in compliance with said statute, had employed an expert accountant, and was continuously engaged in investigating the departments; that from and after the date that said board of supervisors succeeded to said former board of revision, the members of said board of supervisors refused and failed to make any such examinations; that the making of such examinations was a matter of extreme importance to the proper conduct of the affairs of this municipal corporation in exposing and preventing wrongful and injudicious expenditures of public moneys, and that by reason of such failure to make such examination, the city of Cincinnati is known to have lost a large sum of money, to-wit, twenty thousand dollars, through the defalcation in the water works department of the city of Cincinnati, and other wrongful and wasteful expenditures of public money may have occurred.

This charge has more of the elements of a legal charge than any of the others, but it is certainly lacking in the definiteness and specification which should characterize a charge of neglect of duty and misconduct in office.

Coming now to the objections to the said charges submitted by the respondents, I find that the first, to-wit: "Because said charges and specifications do not state a case either of neglect or misconduct in office, or any other case requiring such answer, inquiry or trial against said respondents or either of them," to be well taken.

The second, to-wit: "Because the specifications set forth in the said charges do not sustain either of said charges," I find to be well taken.

Third. Because said charges are not made by the mayor of the city of Cincinnati, I find to be not well taken.

Fourth. Because said charges are not supported or verified by an oath or affirmation of any of the signers thereof, or by any

one else in their behalf, I do not find this objection to be well taken.

Fifth. Because said charges are made jointly against all six members of said board of supervisors, against them as a board. The record of the mayor's office showing that two of said members were members of said board since April, 1893, and also of the board of review from 1891 to 1893; two of said members since April, 1895, and one of said members since April, 1896, and one of said members since April, 1897.

I am of opinion that this objection is well taken so far as the wholesale allegations contained in these charges are concerned. If, however, there was alleged a specific act of misconduct in which all of the respondents joined or participated, I am inclined to the opinion that they could be so joined.

Sixth. Because said respondents can not be charged severally with neglect of duty or misconduct in office except upon charges and specifications and directed against each separately from the other respondents.

This objection is well taken, except that as to any one specific act of neglect or misconduct, in which all of the respondents participated and joined, I am inclined to the opinion they can be joined.

The seventh objection is: Because said charges and specifications are not specific or direct as to either or any of said respondents, or as to them jointly, but indiscriminately cover a period of fifty-two months, during which period, two of the members thereof, two of the respondents, were members for twenty-eight months, one of the respondents was a member for sixteen months, one of the respondents for four months. I think this objection is well taken.

Eighth. Because said charges and specifications nowhere state what departments of the city government were not investigated. I think this objection is well taken.

Ninth. Because the first charge is indefinite in not stating what departments were not reviewed or investigated, and further, because such review and investigation is discretionary with the board of supervisors.

I am of opinion that this objection, in the absence of an allegation of corrupt abuse of such discretion, is well taken.

Tenth. Because the second charge does not specify that any irregularities existed, or of any act having been discovered, or that the board of supervisors or any of its members knew of any irregularities to report to council, or knew of retrenchment of the expenses or improvements of the city government in which the board or any of its members could suggest to council.

I am of opinion that this objection is well taken for reasons herein above stated.

Eleventh. Because as to the third charge, that it is indefinite, in not stating specifically what investigations are provided for in Rev. Stats., sec. 1720, and which were not made.

This objection is well taken.

Twelfth. Because as to the fourth charge,

the employment of accountants to examine books and papers of any department of the city government is wholly within the discretion of the board of supervisors, and is not required by Rev. Stats., sec. 1720.

In the absence of an averment that there was provision or could have been provision for the payment of such accountants, and that such failure to employ was occasioned by a corrupt abuse of the discretion vested in the supervisors, I think this objection is well taken.

Thirteenth. Because as to charge five, the charges do not state what sort of examination the board of revision had made, and because the Rev. Stats., sec. 1720, do not make any continuous, or any examination by any accountant, obligatory upon the board, nor specify in what way any failure to make investigation of the water works department of the city government is known to have lost twenty thousand dollars, nor is it stated for what months such examination should have been made, nor does it specify what wrongful and wasteful expenditures of public moneys occurred by reason of any act of omission of respondents. I think this objection is well taken.

Fourteenth. Because in neither of said charges and specifications is it charged or stated that respondents, or either of them, were guilty of any willful, intentional or careless neglect of duty or misconduct in office.

I am of opinion that this objection to the charges is well taken. If the board of supervisors has made mistakes, or has misconstrued the law, and such mistakes and misconstruction have been made in good faith, and with the knowledge and acquiescence of the city's legal advisers, I do not think they would constitute neglect of duty or misconduct in office in contemplation of the law.

It is laid down in 1 Dillon on Municipal Corporations, 4th Ed., sec. 255: "There must be a charge or charges against him, specifically stated, with substantial certainty; yet the technical nicety required in indictments is not necessary." Citing, Tomber v. Lithgow, 1 Bush, (Ky., ( 176, (1866;) Rex v. Lyme Regis., Doug., 179; Baggs' case, Coke's Reports, vol. 6, 174.

The opinion by Lord Coke in Baggs' case is one of the most instructive cited in this whole controversy.

This rule is likewise recognized by the district court of this county in Hogan v. Carberry, 4th W. L. B., 115, and in the case of the State of Ohio, ex rel. Patrick J. Hogan v. Sutton et al, 4th W. L. B., 610.

I am of opinion that in law these charges are clearly insufficient, and do not state, with that reasonable certainty which the law and fairness demand, any case of neglect of duty or misconduct in office. I am further of the opinion that these charges, as they now stand, can not legally be made the foundation of any order by the mayor as to the removal of these officers.

Having found that it is the intention of

his Honor, Mayor Tafel, to proceed to an early hearing, and put the plaintiffs herein on their defense as to these charges, and having come to the conclusion that these charges are insufficient in law and can not be made the foundation of any order of removal by the mayor, the question now arises whether or not a court of chancery by an injunction can restrain the mayor from proceeding further to hear testimony on these charges, determine their truth or falsity, and act thereon. I am of opinion that I have no power to restrain such proceedings by the mayor by an order of injunction. I am aware that these proceedings subject the plaintiffs to great annoyance and inconvenience, but injunction will not lie to restrain the mayor from hearing these charges, and if he concludes to do so, remove plaintiffs from office.

The leading case on this subject is the case, In re Sawyer et al., decided by the United States Supreme Court in the October Term, 1887, delivering its opinion per Mr. Justice Gray in the 124 U. S., 200.

In the opinion of the learned justice, he examines all the cases down to the date of his opinion. On page 212, he says: "It is equally well settled that a court of equity has no jurisdiction over the appointment and removal of public officers, whether the power of removal is vested as well as that of appointment in executive or administrative boards or officers, or is entrusted to a judicial tribunal. The jurisdiction to determine the title to a public office belongs exclusively to the courts of law, and is exercised either by certiorari, error or appeal, or by mandamus, prohibition, qou warranto or information in the nature of a writ of quo warranto, according to the circumstances of the case, and the mode of procedure established by the common law or by statute."

No English case has been found of a bill for an injunction to restrain the appointment or removal of a municipal officer. But an information in the court of chancery for the regulation of Harrow School, within its undoubted jurisdiction over public charities, was dismissed so far as it sought a removal of governors unlawfully elected, Sir William Grant, saying: "This court, I apprehend, has no jurisdiction with regard either to the election or a motion of the corporators of any description." Att'y General v. Clarenden, 17 Ves., 491, 498.

High on Injunctions, 3rdEd., vol. 2, sec. 1312, says: "No principle of the law of injunctions, and perhaps no doctrine of equity jurisprudence, is more definitely fixed or more clearly established than that courts of equity will not interfere by injunction to determine questions concerning the appointment or election of public officers, or their title to office, such questions being of a purely legal nature, and cognizable only by courts of law. A court of equity will not permit itself to be made the forum, for determining disputed questions of title to public offices, or for the trial of contested elections, but will in all such cases leave the

claimant of the office to pursue the statutory remedy, if there be such, or the common law remedy by proceedings in the nature of quo warranto."

In the case of Delahanty v. Warner, 75 Ill., 185, the supreme court of Illinois, says: "A court of equity has no jurisdiction to entertain a bill to enjoin the mayor and aldermen of a city from removing a party from an office, and appointing a successor, and from preventing the party from discharging his duties after removal by them, as the party's remedy at law is complete by quo warranto against the successor, or mandamus against the mayor and councilmen."

In the 119 Ind., 482, the supreme court says: "It is not within the jurisdiction of a court of equity to enjoin a common council of a city from proceeding to hear and investigate charges preferred against water works trustees or other municipal officers, and removing them from office. A common council is not a judicial body, in the examination of charges preferred against a municipal officer, with a view to determine whether he shall be removed; and in removing him, it does not act judicially in such a sense as to subject its proceedings to the jurisdiction of a court of chancery either by way of prohibition or injunction."

The Ohio case cited to me by counsel for plaintiffs, is the case of Weber v. Governor Bishop, decided by Judge Smith of the court of common pleas of this county in 1879. In that case Judge Smith issued a restraining order, which he subsequently dissolved, basing his dissolution thereof on a finding of fact that the allegations of the petition were not true. He does hold that the Governor of the state, acting in a ministerial capacity, is subject to authority of the judiciary in determining all legal questions judicially brought before it. There is no doubt about the correctness of this proposition and its applicability to the mayor of the city of Cincinnati in a proper proceeding. The cases cited and relied on by Judge Smith in that opinion, are cases of mandamus. Judge Smith in that case does not seem to have had his attention especially directed to the question whether or not injunction was the appropriate proceeding in which to try the legal question involved in the ministerial act of the officer. I find that Judge Smith in the case of Miller against the Directors of Longview Asylum, in the 4th W. L. B., page 690, denied an injunction applied for to restrain the directors of that institution from trying Dr. C. A. Miller on certain charges looking to his removal.

The cases of Hogan v. Carberry, 4th W. L. B., 113, and Hogan against Sutton et al., 4th W. L. B., 608, decided by the district court of this county, (opinions by Judge Burnett,) were both cases where the legality of proceedings by which the Governor removed a member of the board of police commissioners was reviewed in a suit in mandamus.

It was held in the 22 Iowa, p. 75: "The

right to a public office or franchise can not be determined in equity upon an original bill for injunction. Quo warranto is the proper proceeding.''

One of the best considered cases directly on this point has been decided in 1893, by the common pleas court of Cuyahoga county, this state, Judge Stone delivering the opinion: ''A court of equity will not interfere by injunction on the ground that the municipal officials charged by statute with authority to hear and determine charges made against such police officer and make such removal, hold their offices under an unconstitutional statute, or on the ground that such officials are acting from improper motives, and are so prejudiced as that the police officer can not obtain before them a fair and impartial hearing. In such a case the police officer has an adequate remedy at law by mandamus to compel the proper officials to reinstate him in case of his unlawful removal.''

This case is in point on the contention of the charges in the case at bar, that the insufficiency of the charges in the case at bar strikes down the jurisdiction of the mayor entirely and leaves him powerless to prosecute this investigation.

If a law were unconstitutional, the examining officer would certainly be without jurisdiction, and an injunction would lie in that if it would in any case.

The supreme court of Ohio, in the case of Reemelin et al. v. Mosby, (opinion per Judge Williams, )47 Ohio St., 572: ''As a general rule a court of equity will not exercise its jurisdiction to control the conduct of a public officer by injunction, except when necessary to prevent a breach of trust, affecting a public franchise or some illegal act under color of authority, injurious to the property rights of individuals. An injunction may be properly allowed, however, where parties are at issue concerning their legal rights, and it is necessary to preserve their rights in statu quo until the determination of the controversy, and we entertain no doubt of the correctness of the rule established by the cases referred to by counsel for the motion, which is, that the remedy by injunction may be employed by the incumbent of a public office to protect his possession against the interference of an adverse claimant, whose title is in dispute until the latter establishes his title at law.''

The syllabus of the case is as follows: ''The remedy by injunction may be employed by the incumbent of a public office to protect his possession against the interference of an adverse claimant whose title is in dispute until the latter shall establish his title at law; but it is not the appropriate remedy to try the title to a public office or determine questions concerning the authority to make appointments thereto.''

''Injunction will not lie at the suit of members of a municipal board against the mayor to restrain him from the exercise of his appointing power under a statute which requires him to appoint the members of another municipal board on the ground that the act is unconstitutional, and the person so appointed will attempt to deprive the plaintiffs of their office.''

The case at bar is not a trial of title to office, because plaintiff's title is admittedly good, but it is an application to a court of equity to intervene in the discharge of an executive or ministerial function by a public officer looking to the divesting of such title. The defendant is not a claimant to the office, setting up an adverse title, nor is the title to the office at all drawn in question. The utmost that chancery has ever permitted in this regard is a restraining order pendente lite in favor of the incumbents against the claimants during the trial at law to determine the title to the office. This certainly is not the case at bar.

I have been cited to a large number of cases on the subject of prohibition. The writ of prohibition is defined by High as an extraordinary judicial writ, issuing out of a court of superior jurisdiction and directed to an inferior court for the purpose of preventing the inferior tribunal from usurping the jurisdiction with which it is not legally vested. It was originally a common law remedial writ. It does not exist in the state of Ohio.

Counsel for plaintiffs claim that inasmuch as the writ of prohibition does not exist in the state of Ohio, its place is taken and covered by the writ of injunction. I have been cited no authority on this proposition, and am unwilling independently to so hold. Further, even if injunction were to take the place of a writ of prohibition in Ohio, it would be extremely doubtful whether it would be applicable as contended for by counsel for plaintiffs in the case at bar. In the case of the State ex rel. Attorney-General against Hawkins, 44 Ohio St., 98, the supreme court, (opinion by Judge Minshall), held that ''the power conferred on the Governor of the state by sec. 1872 of the Rev. Stats., as amended by said act, to remove any members of the board of police commissioners, is administrative, and not judicial in its nature, and therefore not in conflict with art. 4, sec. 1, of the constitution, conferring judicial power to courts of the state.''

If the exercise of the power of removal is not judicial in its nature, even although the process of such removal may partake of the character of a judicial proceeding, but is administrative, I do not see how an order could issue from this tribunal to that. (Also see 119 Ind., 482, quoted above.)

My attention is called to the fact that injunction in Ohio is defined by statute, Rev. Stats., 5571. Although injunction in Ohio is to a certain degree statutory, examination of the cases shows that it has always been recognized to be equitable in its nature, and subject to all the rules of courts of chancery.

I am cited to a learned opinion by Sir George Jessel, master of the rolls, in the case of Beddow v. Beddow, in the Law

Journal, New Series Chancery Reports, vol. 47, p. 588.

"The jurisdiction of the high court to grant injunctions is more extensive than that formerly possessed by the court of chancery which was limited by the practice of chancellors, and by precedents to certain specified cases."

I do not find anything to lead me to the view of plaintiff's counsel in the case at bar in this learned opinion. In the first place, the learned master bases his opinion upon an act of Parliament like which I know of no legislative provision in this country. Further, the order in that case was granted pending an adjustment of partnership affairs by arbitrators and involving property rights.

I am also cited to the case of Armitage v. Fisher, 24 N. Y. Supplement, page 650. This case, on its face, seems more clearly to support plaintiff's contention than any case cited. Even if this case could not be distinguished, I would not feel justified in following it as against the high authority cited above. This action was not an action to remove the president of council from council, as a member thereof, but merely to remove him from the office of its presidency. In that case the court found "that no express power seems to have been conferred, either by statute or by the rules of common council, as they existed at the time of the report of the committee on rules, for removing from his office the president of the common council as such."

In the case at bar there is no doubt about the power of the mayor conferred on him by statute. It is merely the question of the proper and legal exercise of such power.

Referring to some of the cases relied on by plaintiff's counsel, I note that the case of Wheeler v. Cooper, 57 Howard's Practice, 416, was a case of prohibition. The case of Reid ex rel. State v. Waldridge, 24 South Western 457 is also a case where a writ of prohibition was applied for. The case of Moles v. Stevenson, 30 Atl., 647, was a case of mandamus. The case of the State ex rel. Gallagher v. Brown, was a case of application for a writ of mandamus. The case of State ex rel. Hart v. The Council of Duluth, 55 Northwestern, 118,, is a case where the proceedings were reviewed on certiorari. The case of Dullam v. Willson, 53 Mich., 592, is a case of quo warranto.

All of these cases involve and decide questions which may ultimately have to be decided in this controversy as to whether or not injunction will lie in the case at bar.

Although it is an annoyance and an inconvenience to the supervisors to be compelled to defend themselves against frivolous charges, the hearing and investigation is not such apprehended injury as a court of chancery would undertake to prevent by injunction. Of course the real injury apprehended is removal from office, but this can not be enjoined, especially at this stage of the proceedings, and for three reasons: 1st. Non constat, the mayor may acquit these plaintiffs on the hearing on these insufficient charges.

2nd. Public office in this country is not a property right. Tenure of public office is not such a property right for the protection of which the intervention of equity may be invoked. Referring to the opinion of Justice Gray where he says, "No English case has been found of a bill for an injunction to restrain the appointment or removal of a municipal officer," if equity will not intervene to protect an incumbent in the possession of public office in England, where office partakes so much more of the nature of a property right than it does in this country a fortiori it will not in this.

3rd. There is a full and adequate remedy at law in either mandamus or quo warranto, depending upon circumstances and what action the mayor may take, if any.

Counsel for both plaintiffs and defendant impressed on me the importance of this case and the gravity of my decision. I realize it and appreciate it beyond anything they have expressed. On the one hand, the city should be protected from partisan, polictial revolution; on the other, nothing should stand in the way of the highest purity of our municipal government. But there is another danger to be guarded against, and that is, that the whole-sale, vague, irresponsible attack on public officials is destroying the confidence of the American people in our form of government. If a man has been guilty of neglect of duty or misconduct in office name him, state when and where he did it, and what he did, and then the executive and judicial and all branches of government will join in the temperate, dignified and legal investigation of the charge, and the convicted offender will be duly punished.

His Honor, Mayor Tafel, knows that I hold him in high personal esteem; but I want to say frankly to him and to his learned counsel, that at the conclusion of this hearing I desired to put a stop to further procedings on these charges as they now stand, and searched diligently for authority to justify me in enjoining them, because I felt that proceeding on such charges would be a travesty on justice and municipal government.

I can not enjoin. The temporary restraining order heretofore granted will be dissolved.

E. W. Kittredge, Joseph Wilby and William M. Ampt, for the plaintiffs.

E. G. Kinkead and Wade Ellis, for the Mayor.

Theo. Horstman, for the charges