[No. 376.   Decided November 18, 1981.]

THE STATE OF WASHINGTON, *on the Relation of the News Publishing Company*, AND FERDINAND I. VASSAULT, *Respondents*, v. S. C. MILLIGAN, *Appellant*.

MUNICIPAL CORPORATIONS—VALIDITY OF CONTRACT—DISCRETION OF CITY COUNCIL—VOID INJUNCTION—CONTEMPT.

The provision of the charter of the city of Tacoma requiring the city council to "annually let the public printing to the lowest and best bidder," and making it " the duty of the city council after having let the contract for the city printing to designate the newspaper published by the party receiving said contract as the official newspaper of said city," does not compel the city council to let the contract for the city printing to the lowest and best bidder who is at the time the publisher of a newspaper, nor does it forbid their letting the contract to one who, at the time of the bidding, is not the publisher of a newspaper. The discretion is especially conferred upon the council, and upon no other tribunal, of determining who is the lowest and best bidder.

Where the action of a city council is authorized by law, and the council acts within the limits of the discretion conferred upon it by such law, a court of equity will not sit in review of its proceedings and enjoin its actions.

Where a court is without jurisdiction of the subject-matter of an action, its order imposing a fine for contempt is void.

## Appeal from Superior Court, Pierce County.

Proceedings against S. C. Milligan for contempt in disobeying an order of injunction issued by the superior court of Pierce County. The action out of which this contempt proceeding arises was brought by the News Publishing Company, as a citizen, resident and taxpayer of the city of Tacoma, against the city of Tacoma, and its officers and agents, to restrain the said city from awarding any contract to W. A. Berry to do the public printing of said city, and to prevent the defendant city from permitting or authorizing the public printing of said city to be done by said W. A. Berry.

Upon the application made by the plaintiff to the court below, a temporary injunction was issued against the city, its officers and agents, enjoining them from entering into any contract with the said W. A. Berry for doing such public printing, or from in any manner allowing or permitting him to do the same or any part thereof, or from paying him any money or giving him any compensation of any kind whatsoever therefor.

This injunction was duly issued and served upon the defendant, the city of Tacoma, and also personally served upon several of the principal officers of said city. Afterwards, on the 23d day of September, 1891, the defendant appeared by the appellant, S. C. Milligan, as its attorney of record, and filed a demurrer to said complaint upon several grounds, among others that said complaint did not state facts sufficient to constitute a cause of action as to the defendant, the city of Tacoma, and that said court had no jurisdiction over the subject-matter of said action; which demurrer was argued and submitted to the court, and on the 3d day of October, 1891, the court rendered its opinion overruling said demurrer, and on the evening of the same day on which the court's opinion was announced, the city council of the city of Tacoma passed a resolution in which they designated the said W. A. Berry as the publisher of the *Evening Call*, and designated said *Evening Call* as the official city paper for the ensuing year, and by the terms of said resolution authorized the said Berry to do the public printing of said city, in said so-called newspaper, the *Evening Call*. The appellant, S. C. Milligan, during all of the times herein referred to, was one of the officers of the city of Tacoma, namely, the city attorney, and was the attorney of record in said cause so pending in said superior court; and at the meeting of said council on Saturday evening, October 3, 1891, said appellant was

10—3 WASH.

present, and he then and there stated to said city council that if the passage of said resolution should be held to be in contempt of said order of injunction, that he, the appellant, would be responsible therefor.

On the fifth day of October, 1891, the plaintiff in said cause, the News Publishing Company, filed its motion in said court praying that an attachment should issue against the appellant and others, and that said parties be punished for contempt of court because of their disobedience of the said order of injunction, and in support of said motion filed the affidavit of Ferdinand I. Vassault, wherein said Vassault made oath that said S. C. Milligan had been guilty of violating said injunction by advising and counseling the passage of said resolution authorizing said W. A. Berry to do said public printing aforesaid, and by assuming himself the responsibility of the violation of said order of injunction.

Upon said motion and affidavit, an order was duly made by the court and issued by the clerk thereof, directed to the sheriff, commanding the appellant and others to appear and show cause why an attachment should not be issued against him for contempt. Said order having been duly served, the appellant and others appeared and filed their motion, praying the court to vacate and dismiss the said proceeding for contempt and the said order to show cause, upon numerous grounds. The said motion having been overruled, the said appellant filed his answer.

And thereupon, the court being of the opinion that an attachment ought to issue, and that no cause had been shown against the issuing of the same, the clerk was ordered to docket contempt proceedings against said appellant and others in the name of the State of Washington, on the relation of the News Publishing Company and Ferdinand I. Vassault, against said appellant and others,

and in said cause so docketed, an attachment was ordered by the court and the same was duly issued by the clerk, approved by the court, and the appellant and others were brought into court under said writ of attachment to answer to the charge of contempt. And said matter then coming on to be heard, the state appearing by the prosecuting attorney, and the relators by their attorneys, and the said appellant by his attorneys, all the records of the cause in which said injunction order was issued were offered in evidence, including the motion of the News Publishing Company, the affidavit of Ferdinand I. Vassault, motion and answer of the appellant, to all of which the appellant objected, but did not himself offer any evidence and made no specific objection to any particular portion of the evidence against him.

From all these records, it appeared to the court and the court found that the said order of injunction had been duly issued against the city of Tacoma, and that the appellant, S. C. Milligan, having full knowledge of said injunction, and being at the time an officer and agent of the said city of Tacoma, actively participated in and encouraged the passage of said resolution, himself undertaking to assume all responsibility therefor, and that he thereby willfully violated the said order of injunction, and accordingly the court proceeded to render its judgment, finding the said appellant guilty of a contempt of court, and a willful violation of the order of said court, made in a case in which he was the attorney of record, and against a defendant municipal corporation, of which he was an officer and an agent, and upon finding him guilty as aforesaid, the judgment of the court was that he pay a fine of fifty dollars, etc. From such judgment the said S. C. Milligan appeals to this court.

*Crowley & Sullivan,* for appellant:

The power to punish for contempt is only auxiliary and incidental to jurisdiction over the subject-matter. If there was no jurisdiction over the subject-matter, the acts of the court were *extra* judicial and void, and it is not a contempt to violate an order of a court made without jurisdiction. *Walton v. Develing,* 61 Ill. 201; *Perry v. Mitchell,* 5 Denio, 537; *Darst v. People,* 62 Ill. 306; *Dickey v. Reed,* 78 Ill. 261; *Lester v. People,* 23 Ill., Jan. 21, 1890, N. E. Rep. 387. This doctrine has been established by repeated adjudications in the supreme court of the United States. *Ex parte Fisk,* 113 U. S. 713; *In re Sawyer,* 124 U. S. 200; *In re Ayers,* 123 U. S. 443; *Ex parte Rowland,* 104 U. S. 604; *Thompson v. Caton,* 3 Wash. T. 31; *Bigelow v. Forrest,* 9 Wall. 351; *Windsor v. McVeigh,* 93 U. S. 274.

Upon the city council devolved the duty of letting the public printing to the lowest and best bidder. The decision of the question as to who was the lowest and best bidder rested entirely with the city council, and was a matter within their discretion. This discretion cannot be interfered with by any court. *Kelly v. Chicago,* 62 Ill. 279; *Com. v. Mitchell,* 82 Pa. St. 343; *Heffner v. Com.,* 28 Pa. St. 108; *Douglass v. Com.,* 108 Pa. St. 559; *State v. McGrath,* 91 Mo. 386; *Hoole v. Kinkead,* 16 Nev. 217; High, Ex. Leg. Rem. (2d ed.), § 92; *People v. Campbell,* 72 N. Y. 496; *People v. Contracting Board,* 27 N. Y. 378; *State v. Board of Education,* 24 Wis. 683; *Des Moines Gas Co. v. Des Moines,* 44 Iowa, 505; 24 Am. Rep. 756; *East River Gas Light Co. v. Donnelly,* 93 N. Y. 557; *Walsh v. Mayor, of New York,* 113 N. Y. 142; *Kelley v. Mayor, etc., of Baltimore,* 53 Md. 134; *Fitzgerald v. Harms,* 92 Ill. 372.

A municipal corporation is a political body, clothed with certain legislative and discretionary powers, and courts will not sit in review of subordinate political or municipal tri-

bunals, or interfere with matters left to the discretion of such bodies. 2 High, Injunctions (2d ed.), § 1240; *Moses v. Risdon,* 46 Iowa, 251; *Publishing Co. v. Staats Zeitung Co.,* 55 Ill. 127; *Leach v. Day,* 27 Cal. 643; *Branch Turnpike Co. v. Board of Supervisors,* 13 Cal. 190; *Murphy v. East Portland,* 42 Fed. Rep. 308; *Findley v. City of Pittsburgh,* 82 Pa. St. 351; *Alpers v. San Francisco,* 12 Sawy. 631 (32 Fed. Rep. 506).

*Pritchard, Stevens, Grosscup & Seymour,* and *W. H. Snell,* Prosecuting Attorney, for respondents:

The agents and attorneys of defendants against whom an order of injunction has issued are liable for its violation. *Watson v. Citizens' Savings Bank,* 5 S. C. 159; *Wilcox, etc., Co. v. Schimmel,* 59 Mich. 524; *State v. Cutler,* 13 Kan. 131; *Fanshawe v. Tracy,* 4 Biss. 490; *People v. Dwyer,* 90 N. Y. 402; *People v. Sturtevant,* 9 N. Y. 263; 59 Am. Dec. 536. The mere fact that an injunction may have been erroneously or improvidently issued is no defense whatever in favor of the accused who has violated it. *Sullivan v. Judah,* 4 Paige, 444. The city council of Tacoma have a discretion to determine which publisher of a newspaper is the lowest and best bidder for the public printing. That discretion, and to that extent, is within the law, but when they undertake to award the contract to one who is not the publisher of a newspaper, they are outside of the law and trying to act against it. High, Injunctions (3d ed.), § 1251; *Commissioners v. Templeton,* 51 Ind. 266; *Sinclair v. Commissioners of Winona County,* 23 Minn. 404; 23 Am. Rep. 694; *Crampton v. Zabriskie,* 101 U. S. 601; *Mayor, etc., Baltimore v. Keyser,* 72 Md. 106; 2 Dill., Mun. Corp. (4th ed.), §§ 914–922; *Boren v. Commissioners,* 21 Ohio St. 311; *People v. Commissioners,* 4 Neb. 150; *Follmer v. Nuckolls County,* 6 Neb. 204; *State v. York County,* 13 Neb. 57; *People v. City of Chicago,* 53 Ill. 424.

The opinion of the court was delivered by

Dunbar, J.—This action involves the construction of § 48, art. 3 of the city charter of the city of Tacoma, which is as follows:

"Sec. 48. The city council shall annually let the public printing to the lowest and best bidder, who shall give a bond to the city, in such sum as may be fixed by the council, to well and faithfully perform the contract, should he receive the contract for doing the city printing, and it shall be the duty of the city council, after having let the contract for the city printing, to designate the newspaper published by the party receiving said contract as the official newspaper of said city. All ordinances, resolutions, notices, tax and assessment sales and other proceedings, statements, doings or matters of the city required to be printed shall be published therein."

It is contended by the respondent that by virtue of said section the city council is compelled to let the contract for the city printing to the lowest and best bidder, who must at the time be the publisher of a newspaper, or at least that they cannot let the contract to any one who is not, at the time of the bidding, the publisher of a newspaper. This was the construction placed upon the law by the court, and the construction that is necessary to sustain the injunction in this case; while it is contended by the appellant that no such restrictions are placed upon the city council, which is the sole and exclusive judge of the bids for the printing. This section may appropriately be characterized as an instance of unfortunate legislative expression, and a plausible argument may be predicated on either construction, and it cannot be gainsaid that the argument of counsel for respondent presents many reasons tending very strongly to support his contention. And yet it seems to us that such construction does not necessarily follow from the wording of the section, and the court will be inclined to give it the most liberal construction, and allow the fullest scope for compe-

tition consistent with its terms.      It cannot be presumed that in enacting this act the local legislature had in view a protective policy for the benefit of established newspapers, or that the welfare of newspapers entered into its calculations at all.      It is evidently the spirit and intention of the law that the city council shall be clothed with authority to make the best bargain it can for the city with reference to such printing, and it must necessarily be clothed with some discretion as to who is the lowest and best bidder.      This discretion seems especially conferred upon it and upon no other tribunal, and in the absence of a fraudulent abuse of discretion, its judgment is supreme.      It does not necessarily follow that the best bidder is the person who has a newspaper with the largest circulation, nor does it follow that because the council is required after having let the contract to designate the newspaper published by the party securing said contract as the official newspaper of the city, that the newspaper so designated shall then be in existence.      If it sees fit the city council has a perfect right to demand conditions precedent to the letting of the contract; it may require the bidder to enter into contract to publish a certain kind of newspaper, and even that it shall have a certain circulation; after this is done it may award the contract and name the paper.      The requirement of the charter as to designating the paper doing the printing as the official newspaper is simply a requirement to give notice, and is no part of the contract.      Had the freeholders intended to confine the bidding to owners of newspapers, they would probably have expressed such limitation in unmistakable terms, and in the absence of such expressed limitation, or of language plainly inferring it, courts will not be justified in presuming such restrictive intention.

No principle of equity jurisprudence is better established than that courts of equity will not sit in review of proceedings of subordinate political or municipal tribunals, and that

where matters are left to the discretion of such bodies the exercise of that discretion in good faith will not, in the absence of fraud, be disturbed.    High on Injunctions (3d ed.), § 1240.    In this case we think the council was acting within the scope of its lawful authority, so that the rule laid down by Mr. High in the next section, 1241, "that the restrictions thus placed upon equitable interference with the action of municipal corporations do not extend to cases where the act sought to be enjoined is in excess of the corporate power," has no application to this case.    Possibly some inconvenience may on occasion arise by pursuing the policy adopted by the city council of Tacoma in this case; but to hold that the bidders must have the qualification of publishers would be to encourage a monopoly in the bidding business which might defeat the very object of the law and deprive the city of the benefit of competition, and make the requirement of bidding a mere farce.    In this case we think the law authorizes the action of the city council, that they are acting within the limits of their discretion, and that the court therefore did not have jurisdiction of the subject-matter of the action, and that its action is therefore void.

It has been uniformly held by the supreme court of the United States that where a court acted without jurisdiction that the order of said court imposing a fine for contempt is void.    In *Ex parte Fisk,* 113 U. S. 713 (5 Sup. Ct. Rep. 724), the court says:

"The circuit court was, therefore, without authority to make the orders for the examination of petitioner in this case, and equally without authority to enforce these orders by process for contempt.    Its order fining him for contempt, and committing him to the custody of the marshal, was without jurisdiction and void, and the prisoner is entitled to his release."

It was announced by the court, *In re Ayers,* 123 U. S. 443 (8 Sup. Ct. Rep. 164), that "when a court of the United States undertakes, by its process of contempt, to

punish a man for refusing to comply with an order which that court had no authority to make, the order itself, being without jurisdiction, is void, and the order punishing for the contempt is equally void."

The same doctrine is reiterated in *In re Sawyer*, 124 U. S. 200 (8 Sup. Ct. Rep. 482), where the court thus lays down the rule:

"The circuit court being without jurisdiction to entertain the bill in equity for an injunction, all its proceedings in the exercise of the jurisdiction which it assumed are null and void.    The restraining order, in the nature of an injunction, it had no power to make.    The adjudication that the defendants were guilty of a contempt in disregarding that order is equally void, their detention by the marshal under that adjudication is without authority of law, and they are entitled to be discharged."

It is not necessary to pursue the authorities further, though we think on this point they are uniform, and indeed it is conceded by the respondent that "the parties may with impunity violate an injunction which is absolutely void because of the total want of jurisdiction;" but he combats the idea that they may violate an injunction based upon a complaint which does not state facts sufficient to constitute a cause of action, which proposition is not considered or passed upon by this court, the judgment of this court being based upon the conclusion that the court was without jurisdiction of the subject-matter.    It follows that the judgment must be reversed, the writ of attachment quashed, and the defendant discharged; and it is so ordered.

ANDERS, C. J., and HOYT, STILES and SCOTT, JJ., concur.